No. 16,461.

UHL *v.* McENDAFFER.

(225 P. [2d] 839)

Decided November 27, 1950.

70

Mr. Herbert E. Mann, for plaintiff in error.

Mr. M. E. H. Smith, Mr. Karl R. Ahlborn, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

This controversy involves a judgment for damages obtained by plaintiff McEndaffer against defendant Uhl for the removal of a fence on a section line between their properties.

Plaintiff owned land in section 29, the east boundary of which was the section line between sections 29 and 28. Defendant owned land in section 28 adjoining this section line. While this land was public domain, and on the 6th day of November, 1889, the board of county commissioners of Weld county passed a resolution declaring all section and township lines on the public domain of the United States, in Weld county, to be public highways. This resolution was in pursuance of a then existing statute of the United States which provided, "The right of way for the construction of highways over public lands not reserved for public uses is hereby granted." So far as the particular part of the section line here involved is concerned, the record discloses no further action by the board of county commissioners either to improve the same as a highway, or to vacate. The dispute here rests squarely on the question whether thirty feet of the land on each side of the section line is, or is not, a public road or highway. If it is a public road,

under all the circumstances, then plaintiff's action could not be maintained.

For seventeen years plaintiff was a tenant on the Dinsdale ranch lying largely in section 28 on the east side of the section line. The Dinsdale ranch changed ownership and defendant became the owner of a part of this ranch. Plaintiff acquired land in section 29 on the west and adjoining the section line in question. At the time plaintiff acquired his land, there was a fence running north and south, more or less through the middle of his land, and soon thereafter, he caused this fence to be moved east over approximately to the section line— he says some eighteen inches to three feet from the line. In the year 1948, and prior thereto, he had grazed his land and some adjoining acreage and had in April of 1948, about 150 head of cattle. It appears that defendant had some irrigated land lying east of the section line and that differences between plaintiff and defendant over water and water rights had existed for some period of time, with some court actions pending.

In April of 1948, defendant, desiring to have the road overseer run the grader over the land on the section line, which he claims is, and was, the public road or highway, was told by the road overseer that if the fence was removed, he would run a blade over the road. The defendant then removed, or caused to be removed, the half mile of fence, taking the material to his home, and the road overseer did run the blade over the ground in question. Plaintiff, claiming that defendant was without right or authority to remove the fence, filed this action in damages for the value of the fence removed, in the sum of $100 and damages for loss of the use of the pasture land for grazing purposes in the sum of $400, and prayed judgment in the amount of $500. Upon trial to the court without a jury, judgment was entered on October 8, 1949 in favor of plaintiff in the amount of $90 for the wrongful removal and possession of the fence and $400 as damages for loss of pasturage. Motion for

new trial was filed and denied. Defendant now brings the cause here for review by writ of error.

Defendant claims that the trial court, having found and determined that by the resolution of 1889 the board of county commissioners of Weld county had ordered certain section and township lines in Weld county, including the section line here involved "to be the center of public highways or county roads, which roads shall be, and hereby are, declared to be roads 60 feet wide, being 30 feet on each side of said section and township lines," then erred in holding that defendant was without right and authority to remove the fence from the section line for the purpose of having the roadway bladed; that it further erred in not finding that the fence on the section line was an obstruction on the highway; and further, in finding that the section line in question "had never been used as a roadway by anyone, nor was there any appropriate action by the Board of County Commissioners of Weld County to effect removal of the fence for the road along said section line," in view of plaintiff's evidence to the contrary and of plaintiff's witness, the county road overseer.

There is some conflict in the evidence as to the original ownership of the fence involved, and as to its repair and upkeep. Opposing claims are made by both parties relative thereto. There is no conflict in the evidence that the old mail carrier route ran along or close to parts of this section line. There is no denial that the original owner of the Dinsdale ranch generally used the roadway or trail used by the mail carrier, and that plaintiff, during the seventeen years he was tenant on the Dinsdale ranch, traveled along this roadway, and that defendant Uhl also had used the same roadway for about four or five years prior to this controversy. As to any recognition by the county of this section line being a public roadway, we have the testimony of plaintiff, which is as follows:

" * * * They graded it off on my side of the fence in about forty-one, but the maintainer went down when he was working on the road that runs east and west and I asked him if he would grade it off for me. And he come up there and he graded the road .clear to three miles north of me on the mail route, but we never asked anything of the commissioners; I just asked the maintainer and he come up and done that of his own accord."

Plaintiff further testified on cross-examination: "Q. When this fence was removed, did the County come in and blade it; did they make a road? A. Yes, on my side of the fence. Q. Did they blade the road on your side of the fence after it was removed? A. Thirty feet of it. Q. Was there any on Mr. Uhl's side bladed? A. I suppose they bladed it right up through the center of the section line. Q. Then the blading was done where the road and the property meet, is that right? A. Yes. Q. And they could not blade it very well, the road, with a fence on it, could they? A. No. Q. And they didn't go over into the land and do any blading, did they? A. Thirty feet of it. Q. That would be thirty feet dedicated to public highway purposes? A. When was that road dedicated to highway purposes? Q. On October 12, 1889. A. Well that road wasn't used up to that time for a road. Q The question I am asking, Mr. McEndaffer, is that the County stayed well within the sixty feet bladed on each side of the section line? A. I think so. Q. Your pasture land was not irrigated? A. No. Q. Was Mr. Uhl's meadow land irrigated? A. Yes. Q. Did he raise any hay crop off that land? A. Yes. Q. Did you ever see your cattle over on his land at all? A. No. Q. You never did? A. No. Q. Haven't they been over there frequently, Mr. McEndaffer? A. Not that I know of; if they did he would put them out. Q. How much would it cost you to build this fence back on your own side of that road Mr. McEndaffer? A. Oh, I suppose One Hundred Fifty Dollars, or such a matter. Q. Any reason why you could not build your own fence on

your own side of the road? A. I would not say whether I would be able to maintain one there or not. If they are going to take the fence out there would be no use putting it back. Q. You knew this other fence was on the County road, didn't you? A. Yes. Q. And you knew that they graded the road, didn't you? A. Yes. Q. And you knew that you had plenty of room on your own side of the road, didn't you? A. Yes. Q. And Mr. Uhl, when he put the fence back on your side of the road, that is where it about belonged, isn't it? A. Yes, I think so. Q. So you have got a fence up there? A. It is not inclosed. Q. It is not inclosed? A. No. Q. Why not? A. He never put no car crossing in."

█ Counsel for plaintiff, defendant in error, insists that the primary question here is whether or not the resolution of the board of county commissioners ordering certain section lines to be the center of public highways is sufficient to create a public highway or road without either a user or the construction of such road. The validity of the dedication is admitted. In fact this resolution may be deemed to be stronger and more far-reaching than a bare dedication, as the term is ordinarily accepted. It provides that the section line is declared to be the center of public highways or county roads, which roads are declared to be roads sixty feet wide, being thirty feet on each side of said section and township line and, in the words of the statute, delegating such authority to the board of county commissioners, it is said, "The road so laid out *shall* be a public highway." '35 C.S.A., c. 143, §44. (Italics ours.) In view of this declaration, it must be said that the lands here involved, being thirty feet on each side of the section line, compose a public highway and remains as such until vacated or abandoned by some appropriate action of the board of county commissioners. The purpose of the declaration was to provide the right of lawful access to adjacent property. The very purpose of the act would be thwarted if it was held that unless some physical action on the part of the

county authorities in developing or improving the work was performed, in time, nonuse could be said to be a vacation or abandonment. The lines of the roadway are prescribed and await the use thereof by one or more, and that, until such time as statutory provisions for vacating the dedication have been complied with.

■ Time for acceptance of the dedication to avoid abandonment or vacation is not fixed. Acceptance is preserved from the moment of the beginning of continuous use by one or many. *Leach v. Manhart,* 102 Colo. 129, 77 P. (2d) 652. If it could be successfully contended that the thirty-foot strip of land on each side of the section line was not a highway because no road had been constructed, plaintiff's contention here would fail by reason of the undisputed use as a public road as shown by the excerpts of the testimony hereinbefore set out. Defendant testified that, to carry out his desire to have the roadway improved, he requested the county commissioners to view the premises, which was done by one of the commissioners, together with the road overseer; however, the road overseer testified that the county commissioner gave him no instructions one way or the other concerning the matter, and that when defendant requested the road overseer to blade off the roadway, the latter told him that if the fence was removed it would be bladed. Thereupon, defendant removed the fence, which, as can now be determined from our conclusions herein, was an obstruction on the highway. The road overseer then ran a blade over the ground in question.

■ ■ There is no occasion to detail the testimony concerning pasturage or to discuss the validity of the judgment herein, since it must be reversed. However, it is interesting to note that in the testimony concerning the repair of the fence, it is shown that at one place along the fence was an automobile gate and bridge or cattle guard. It is contended that because this was not kept in proper condition, cattle would find their way

across into other lands, regardless of the fence. This indicates that there had been use of this section line generally as a course of travel. It is not to be understood that we hold that a dedicated highway cannot in time be abandoned on account of nonuse. However, abandonment will not ordinarily be implied from mere nonuser when the public need has not required the use. The owners or purchasers of land lying within the district described in the resolution of the board of county commissioners here in evidence, knowing that the section lines, as such, are burdened with a dedication of a highway thirty feet on each side, then the use thereof by such owners or purchasers of the land on either side of the section line is subject to the existing right of use by those within the area entitled to ingress and egress to an open highway, and if there is no such use required, the owners, having knowledge of such burden, should take the necessary statutory steps to have the highway vacated if they purpose to claim the land as their own.

In view of all the circumstances here attending, we determine that plaintiff, after acquiring his land, and then, without right, placing a fence on or near the section line, thereby made an enclosure of the highway and an obstruction thereon; and that defendant was within his rights in causing the fence to be removed in order that a public road or highway might be improved for his needed uses, and that liability did not attach by his so doing.

The dispute as to the ownership and value of the fence which was removed was resolved by the trial court in plaintiff's favor, the value fixed at $90 and judgment given for that amount.

Accordingly, the judgment is affirmed in part and reversed in part, and the cause remanded with directions to the trial court to enter judgment for plaintiff in the sum of $90, each party to pay his own costs.

MR. JUSTICE JACKSON concurs in the result.