John PEROULIS, Robert Lyons, O. Marion Jones, William Schrader, James Showalter, and all other similarly-situated residents and taxpayers of Moffat County, Colorado, Plaintiffs-Appellants,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF MOFFAT and Charles J. Lessor, as Personal Representative of the Estate of Edith Lessor, Defendants-Appellees.

No. 81CA0119.

Colorado Court of Appeals, Div. II.

Dec. 30, 1982.

Rehearing Denied Jan. 27, 1983.

Certiorari Denied June 13, 1983.

Dufford, Waldeck, Ruland, Wise & Milburn, Joseph C. Coleman, Grand Junction, for plaintiffs-appellants.

Thomas C. Thornberry, Craig, for defendants-appellees.

SMITH, Judge.

In this class action suit, plaintiff sought a judicial determination that the contract underlying the purchase of specific, unimproved real property was invalid, and to enjoin the defendant Moffat County Board of County Commissioners (Board) from con-

summating the purchase. The trial court entered judgment denying plaintiffs any relief, and they appeal. We affirm.

The record reveals the following facts. Through the fall of 1977, the Board investigated the necessity of relocating the fairgrounds and the county shop facility. Convinced of the necessity for the relocation, the Board presented a receipt and option contract to the estate of Edith Lessor seeking to purchase approximately 160 acres of unimproved, real property. The offer was for a total cash price of $80,000, with $1,000 down and $79,000 at closing. The contract, dated November 10, 1977, was subsequently rejected by the Lessor estate.

It appears from testimony and exhibits that a counteroffer was presented to the Board at a meeting December 8, 1977. The estate wanted $200,000, with $20,000 down and the remainder due at the closing.

Subsequently, several counter proposals were drafted by the Board differing only in manner of payment. The total price and amount of property remained the same as the counteroffer. On December 9, 1977, the two commissioners who favored the purchase, executed a contract encompassing the original terms set forth in the estate's counteroffer.

Later meetings of the Board gave vent to acrimonious debate among the commissioners as to the advisability of the purchase, but the minutes reveal no attempt to rescind the contract.

On appeal, plaintiffs seek to void · the contract on the theory that the Board exercised powers which it did not have.

## I.

Plaintiffs first argue that there was no valid authorization for the purchase of the subject property. We disagree.

■ In their argument, plaintiffs focus on the lack of a formal, recorded resolution as the basis for their contention that the Board was not authorized to purchase the property. However, an actual formal record of all a board of commissioners may decide and do is not always necessary to make its acts binding. *Mugrage v. People,* 26 Colo.App. 27, 141 P. 522 (1914); *Georgetown & Silver Plume Road Co. v. Hutchinson,* 4 Colo. 50 (1877).

When, as here, the Board or Commission has imprudently failed to record its resolve to act, there is nothing to prevent the fact from being shown by other evidence. *Tallon v. Vindicator Consolidated Gold Mining Co.,* 59 Colo. 316, 149 P. 108 (1915).

■ The following facts make it clear that the Board had resolved to purchase the subject property. The evidence discloses that the Board had unanimously determined that a new fairground and shop site were needed. An offer to buy the subject property, signed by all three commissioners, was drafted and presented to the Lessor estate. A recorded resolution authorized the Board to enter into an option agreement to hold the land until such time as it could consider and act upon a counter-offer. After extended discussion, the counter-offer was accepted by a majority of the Board and a contract was signed. No resolution or action was ever taken to rescind the contract. And, in the preparation of the 1978 budget, the balance of the purchase price was specifically appropriated to complete the acquisition of land for the fairground and shop facilities.

While there is, in the minutes kept by the clerk, no formal record of the Board's decision to purchase the subject property, it is clear from its actions that the Board demonstrated a unanimous resolve and decision to acquire a parcel of vacant land for future county purposes, which decision was ultimately manifested in the purchase of the subject property.

Furthermore, extended discussions, held subsequent to execution of the contract of sale, treated the purchase as an accomplished fact and did not reflect even second thoughts on the part of the Commissioners. This fact and the subsequent formal appropriation of the funds necessary to fulfill the contract are sufficient to constitute, in our view, ratification of the contract. *See*

*Board of County Commissioners v. Simmons,* 159 Kan. 41, 151 P.2d 960 (1944).

## II.

Plaintiffs next assert that the Board improperly expended public works funds for the purchase of unimproved real property. We disagree.

The evidence disclosed that $98,000 was drawn from the 1978 public work's budget to help fund the purchase of the subject property. Section 30–25–202, C.R.S.1973, entitled "Public Works . . . purpose," does not specifically provide for the acquisition of unimproved real property. However, the statute authorizes a fund for, among other things, the "development," "construction," and "acquisition" of public buildings. There is no question but that the property involved here was to be used as the site for new fairgrounds and county shop facilities, both of which fall within the specific funding purpose of the public works statute.

A Board of County Commissioners has implied powers to the extent that such are "reasonably necessary" to carry out their express powers. *See Board of County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970); *Farnik v. Board of County Commissioners,* 139 Colo. 481, 341 P.2d 467 (1959). As the purpose of the public work's statute involved here includes the "development" and "construction" of public buildings, we hold that funds can be spent on vacant land as a necessary and implied incident of that general power as conferred in § 30–25–202.

## III.

Plaintiffs also contend that $1,000 expended from the 1977 general fund was in violation of various Colorado laws regarding budgeting. Again, we disagree.

Plaintiffs argue that since there was no specific budget of money in the 1977 general fund budget for the purpose of acquiring vacant land, the $1,000 drawn from the general fund was done so in contravention of budgeting law.

The evidence was to the effect that the 1977 budget contained a line item entitled "general purpose building," for which $58,500 was allocated. All the testimony was to the effect that this line item had no specific purpose and was included to afford flexibility in allocating funds for unseen needs. It has been recognized that it is "not necessary, and indeed it would be impossible for all practical purposes, to state all the subordinate items in such meticulous detail as to deprive local governments of the elasticity in the management that generalization would allow." *Kotlikoff v. Township of Pennsauken,* 131 N.J.Super. 590, 331 A.2d 42 (1974). Colorado courts have recognized the difficulty and impracticality of requiring local governments, primarily comprised of layman unfamiliar and untrained in the complexities of the drafting of documents which have legal effect, to be precise in their drafting, and to include specifics as to expenditures. *See Mugrage v. People, supra. See also Beshoar v. Board of County Commissioners,* 7 Colo.App. 444, 43 P. 912 (1896). The inclusion of the line item "general purpose building," and the subsequent testimony that this particular item was intended to provide funds for unforeseen needs represents a sufficient appropriation to comply with the statutory requirements of specific allocation. Accordingly, the $1,000 expended from the "general fund" to purchase the property at issue was not in contravention of budgeting laws.

Plaintiffs' other assignments of error are without merit.

Accordingly, the judgment is affirmed.

BERMAN and TURSI, JJ., concur.