**UNITED STATES of America, Plaintiff,**

**v.**

**W.H.I., INC., and Michael and Virginia McGee, Defendants.**

**No. 89–K–1957.**

United States District Court, D. Colorado.

June 16, 1994.

Robert D. Clark, Asst. U.S. Atty., Denver, CO, Robert L. Klarquist, Jacques B. Gelin, Environmental and Natural Resources Div., Dept. of Justice, Washington, DC, for plaintiff/petitioner.

Geoffrey P. Anderson, Phillip S. Figa, Burns & Figa, Englewood, CO, for W.H.I., Inc.

Ronald M. Wilson, Hartert, Wilson, Hartert & Christensen, P.C., Glenwood Springs, CO, for the McGees.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this motion, Defendants W.H.I., Inc. and Michael and Virginia McGee (collectively "Defendants"), seek summary judgment on their affirmative defense that the New Castle Cemetery Road (the "Road"), the road at issue in this action was abandoned or vacated by action of the Garfield County Commissioners several decades ago. I deny the motion because this case is not suitable for summary treatment. Genuine issues of fact and disputed questions of intent require a trial. Nevertheless, I think a full discussion now will help limit the issues for trial and sharpen the focus of the controversy so as to benefit all concerned.

### I. *Facts and Procedural Background.*

Garfield County filed this action in 1988 in state district court, Garfield County, Colorado. The United States was later joined as a Defendant and the case removed to this court in 1989. The United States was realigned as a Plaintiff. At the trial in April 1991, the county and the United States sought a declaration that the Road is a public highway and an order restraining the private landowners from altering, destroying, or further obstructing the Road.[1] At the close of Plaintiffs' case, I granted Defendants' motion for dismissal pursuant to Fed.R.Civ.P. 41(b) on the ground that Plaintiffs failed to show a right to relief. Plaintiffs appealed to the Tenth Circuit. Before briefing, however, the county settled with Defendants and withdrew its appeal, leaving the United States as sole appellant. The Tenth Circuit reversed and remanded to this court for further proceedings on the question of whether a public road was ever established by adverse possession under state law. Defendants now move me to rule in favor of their affirmative defense that the Road, if it was established, was abandoned or vacated by the Garfield County

---

1. Under Colo.Rev.Stat. § 43–2–201(1)(c) (1993), "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years" are declared to be public highways.

Commissioners. Defendants maintain that such abandonment or vacation precludes the United States from proving that a public road was ever created by adverse possession, thus entitling defendants to summary judgment.

The Road was dedicated by Garfield County as a public road in 1929. At the first trial I found that this dedication did not render the Road a public road because the present Road is not situated sufficiently in the same location as the road that was dedicated in 1929. I also found there was insufficient evidence of adverse possession of the Road by the public. The United States appealed only the issue of adverse possession by the public. The Tenth Circuit reversed and remanded on this issue.

The Road is a one lane dirt jeep trail running north from New Castle to White River National Forest. The one mile stretch of the Road between New Castle and Highland Cemetery, passable to two wheel drive passenger cars, has been continuously open to the public and is not in controversy. This action concerns the 5.5 mile stretch from the cemetery to the national forest. In this section, the Road alternately crosses public land and the private land of the Defendants.

In 1959, the then private landowner, Buster Brown, petitioned the Garfield County Board of County Commissioners to vacate or abandon the Road. The board rejected the petition by vote which is recorded in its minutes. In 1960, Buster Brown blocked the Road to the public by erecting a gate just north of the cemetery. Since that time, public use of the 5.5 mile stretch from the cemetery to the national forest has remained obstructed.

Additionally, in 1960, the southern 1.3 miles of the contested portion of the Road were highlighted on the 1960 Garfield County Highway Users' Tax Fund Map [2] and the notation "abandon by co." appears on the map. The map was sent to the Colorado Department of Highways in order to obtain state road funds but neither that map nor any highway users map before or after was recorded in the real estate records of the Garfield County Clerk and Recorder. All Garfield County highway user maps on file with the Garfield County Clerk and Recorder after 1960 show the Road ending at the cemetery.

In 1963, the Colorado Division of Wildlife built the east-west Fuches Gulch Road, a four mile stretch of one lane dirt jeep trail. The Road runs generally north-south from New Castle on Interstate 70 towards the southern portion of the national forest. The Fuches Gulch Road comes from East Elk Creek Road to the west of New Castle to within several hundred meters of the Road at a point approximately one and one quarter miles south of where the Road enters the national forest. The parties dispute whether the Fuches Gulch Road gives access to the national forest.

## II. *Standards for Motion.*

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Summary judgment will be granted against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

---

**2.** In 1953, the State of Colorado enacted a highway law currently codified as Colo.Rev.Stat. §§ 43–2–101 to 43–2–304 (1993). This law required each county, *inter alia,* to inventory its roads and to produce a highway user map showing all county highways and to submit it to the state. The law required counties to update the maps on an annual basis. The state used the maps to distribute gasoline tax revenues to the counties based on the number of miles of county highway in each county.

III. *Merits.*

Defendants argue that, assuming the Road was a public road, Garfield County relinquished its interest in it by abandonment, vacation or closure with implied abandonment and that such vacation or abandonment is binding on the United States. Defendants do not clarify the distinction between vacation and abandonment and these terms are often used interchangeably.

Under current Colorado statutes both vacation and abandonment of a road have the same effect, namely, that the road ceases to be a public road and title to the road vests in the adjacent landowners. Colo.Rev.Stat. §§ 43–2–302, 43–2–106 (1993). Defendants point out that the sole vacation statute in effect between 1949 and 1976 empowered the board of county commissioners of any county to vacate any roadway or part thereof within its county without following any specific procedure. Colo.Rev.Stat. § 43–2–303(1)(b) (1993).

■ Abandonment is ordinarily a question of fact to be resolved by the trial court. *Shively v. Board of County Comm'rs of Eagle County,* 159 Colo. 353, 411 P.2d 782, 785 (1966). Whether a road has been abandoned "'involves ... the question of intent and the acts of the public. Nonuser is not enough, unless coupled with affirmative evidence of a clear intention to abandon.'" *Koenig v. Gaines,* 165 Colo. 371, 440 P.2d 155, 157 (1968) (quoting *Sterlane v. Fleming,* 236 Iowa 480, 18 N.W.2d 159, 162 (1945)). Because it is undisputed that the Road has been blocked to public use since 1960, the issue is whether the county commissioners clearly intended to abandon or vacate the Road.

■ Defendants argue that the Road was abandoned and/or vacated in 1960. They assert that in 1960, the county commissioners caused to be made three separate notations on three separate maps and documents, respectively bearing the words "Abandon," "Note; 1.3 mi aband by co.," and "Abandon 1.3 miles in section 20 and 29 ... T5SR90W." Defendants argue that these notations together with the nonuse of the Road since 1960 reflect an intention on the part of the Board to abandon or vacate the Road. In

support of this contention, Defendants rely on the explanation of Robert Scarrow, the Garfield County Surveyor from 1967 through the date of his deposition in January 1991. According to Scarrow's deposition testimony, the surveyor responsible for drawing county highway maps would meet with the county commissioners who would instruct the him to take roads off the highway map. He would then make the notations on the map. Thereafter, one copy of the map would be sent to the state and the other filed with the clerk and recorder's office in Garfield County. Scarrow testified that these notations, written on the instruction of certain county commissioners, represented the official action of the Board of County Commissioners.

Defendants further rely on the deposition testimony of former Garfield County Commissioner Pete Mattivi, the sole surviving commissioner from the 1950s. Mattivi testifies it was his understanding that after 1960, the road north of the cemetery was no longer a public road and, when a commissioner requested a county surveyor to indicate "abandon" on a highway user map road, he was taking a road off the map and giving up legal title to the road.

Defendants argue that the absence of a formal record of abandonment does not preclude official county action of abandonment or vacation. Defendants rely on *Mugrage v. People,* 26 Colo.App. 27, 141 P. 522, 523 (1914) which held that a formal record is not a requirement for official county action. *See also Peroulis v. Board of County Comm'rs of Moffat County,* 665 P.2d 134, 135 (Colo.App. 1982). They rely also on the affidavit of Leonard Bowlby, Garfield County road supervisor from 1976 through 1985 who testifies that two other roads on the 1960 highway user maps were also marked "abandon" and that during his tenure as road supervisor, neither of these roads was a public road. Defendants assert that Bowlby's affidavit, coupled with that of Harry L. Paulsen stating that the county commissioner minutes from 1960 contain no entry of abandonment or vacation of the two roads mentioned by Bowlby, show that the Garfield County commissioners used this same method to abandon two other roads in the County. Mattivi

and Scarrow testify that county commissioners took official county action such as approving road maps for filing with the state and the clerk and recorder's office without a formal board resolution or recording of such action in the minutes.

Defendants argue further that the Colorado State Division of Wildlife, a division of the same sovereign as Garfield County constructed the Fuches Gulch Road in 1963 as an alternative access to the Boiler Creek Area, an area in the southern portion of the national forest into which the Road also leads. Defendants maintain that the nonuse of the Road coupled with the affirmative action of construction of the Fuches Gulch Road as an alternative road to the same area reflects an intention to abandon the Road.

The United States argues that, on analogy with other cases which have considered a claim of abandonment, Defendants have failed to establish the requisite intent to abandon. An analysis of the cases cited, however, shows that all are distinguishable on their facts and of limited relevance in resolving the issue. The United States cites *Koenig v. Gaines*, 165 Colo. 371, 440 P.2d 155, 157 (1968), for the proposition that abandonment requires construction of an alternate route of access for the abandoned road. The court in *Koenig* held that "[n]onuser and evidence of an intent or determination to abandon amply support a finding of abandonment." *Id.* at 157. On the facts of that case, the court held that construction of an alternative route was evidence of such intent. Although the *Koenig* court did not hold that an alternative route was a necessary requirement for a finding of abandonment, there is no doubt such is a relevant factor to be considered. *See Board of County Comm'rs of Mesa County v. Wilcox*, 35 Colo.App. 215, 533 P.2d 50, 52 (1975).

The United States argues that the Fuches Gulch Road is not an alternate route for the Road as it does not give access to the National Forest or to certain public land, accessible only by the Road. This, too, is a factor to be weighed among others when determining whether the county commissioners intended to abandon the Road at that time.

The United States relies on *Raftopoulos v. Farrow*, 691 P.2d 1160, 1162 (Colo.App.1984) for its contention that deletion from the county highway tax user fund map has been found insufficient to establish intention to abandon. That case concerned a right-of-way declared to be a public highway by the board of county commissioners pursuant to statutory dedication proceedings. The court held that abandonment of the right of way for road purposes could not be implied "because part of this right-of-way has never been used or improved as a road, the right-of-way is not included on the official county highway users map, and a commissioner told one of the defendants that the county had no interest in the unused portion." *Id. Raftopoulos*, however, did not concern the affirmative act of deletion of a road from a tax fund map. The issue was whether a right-of-way had been abandoned. No road had ever been built and none had ever been included on such a map in the first place.

The United States maintains this case is nearly on all fours with *Los Angeles Palm, Inc. v. The Board of County Comm'rs of Garfield County Colorado*, Civil Action No. 85–Z–1536 (D.Colo. April 30, 1987). The United States attaches a transcript of Judge Weinshienk's ruling containing her findings of fact and conclusions of law. (United States Br.Opp.Defs.' Mot.Summ.J., Ex. 3.) That case concerned a road which had been removed from the tax fund map. Judge Weinshienk noted that a 1954 map showed the road in a different location from what the physical location was known to be; that one 1955 map showed a portion of the road as being abandoned whereas, at the time of Judge Weinshienk's opinion, that portion was clearly a county road; that another 1955 map showed a portion of the road as "out" but did not identify specifically the excluded portion; that one 1956 map included the road, while another showed no abandonment; and that a 1957 map did not show any portion of the road as being part of the county highway system. (*Id.* at 11–14.) Judge Weinshienk detailed her observations of these maps "because I think it's important. If these exhibits were really precise and clear, then I'd feel much more comfortable about saying that these amount to an order of the county com-

missioners that this was an abandonment or vacation and that this was official action on the record of the board of county commissioners." Here, it is undisputed that the highway user maps from 1953 to 1960 show the Road to the north of the cemetery, that three 1960 maps reflect a notation of "abandon" or words to that effect with respect to the 1.3 miles of the Road immediately to the north of the cemetery and that, after 1960, no road north of the cemetery appears on any highway user maps. These maps are distinguishable in their consistency from those that formed part of the basis of the ruling in *Los Angeles Palm*. The facts are dissimilar.

The United States asserts that taxation of land constituting a road has been found insufficient to establish an intent to abandon, citing *Wilcox*, 533 P.2d at 52 and *Crane v. Beck*, 133 Colo. 325, 295 P.2d 222, 223 (1956). In *Wilcox*, the court held that if a right-of-way of specified width has been dedicated to public use,

> it is not required that the entire width be at all times put to public use and so long as there is no affirmative evidence that the county commissioners intended to abandon the unused portion, there cannot have been abandonment of a portion of the right-of-way simply because the public need has not yet required the use of the full sixty feet.

*Wilcox*, 533 P.2d at 52. In *Wilcox*, the respondents had attempted to show intention to abandon the unused portion of the right of way through testimony that taxes were assessed on property constituting that unused portion. However, the court noted that there was evidence supporting a finding that taxes were not assessed on the unused portion. *Id.* Therefore, *Wilcox* did not address the situation of whether taxation of land constituting the allegedly abandoned road is affirmative evidence of intention to abandon that road. Further, there is no evidence here that the county commissioners taxed the land of the disputed portion of the Road.

The United States cites *Shively v. Board of County Comm'rs of Eagle County*, 159 Colo. 353, 411 P.2d 782, 784–85 (1966), as authority that neither failure of the county to maintain the road nor permissive erection of gates evidences intention to abandon. In *Shively*, the road in issue had deteriorated to such an extent that the public was unwittingly trespassing on Shively's property. The commissioners gave permission to Shively to erect and lock two gates to help him protect his property. Later, Shively erected and locked another gate on the other side of his property, maintained that no thoroughfare had been established on the part of the road going through his property, and denied the public the right to pass through the gates erected. The commissioners, once apprised of this, brought an action seeking quiet title to the road and an injunction restraining the blocking of public access to the road. The court held it could not be deduced from the original permission granted that, at that time, either the commissioners or Shively intended the roadway to be closed. Further, when Shively did block public access, the commissioners promptly instituted action. The court concluded that neither the commissioners' original permission nor its failure to maintain the road evidenced intention to abandon the road.

The United States relies on its review of the board's minutes from 1953 through 1964 and the lack of correlation between the vacation or abandonment of roads as reflected in the minutes with such vacation or abandonment appearing in highway user maps for the same years. The United States argues that the absence of such correlation indicates that notations on the 1960 highway users tax fund map do not constitute competent evidence of the board's intent to vacate or abandon the Road. Given that official county action can be taken in a variety of ways and is not limited to actions formally recorded in the minutes, the argument is unhelpful in determining the board's intention in this case.

The United States acknowledges that the relevant Colorado statute in effect in 1960, which empowered the board of county commissioners to vacate a roadway, did not require a resolution or ordinance to effect such vacation. The United States argues, however, that case law relating to the statute reflects that private landowners with knowledge that a public right-of-way is asserted

over their land have the burden of taking the necessary steps to have the public road formally vacated. In particular, the United States cites *Uhl v. McEndaffer*, 123 Colo. 69, 225 P.2d 839, 843 (1950) for this proposition.

Defendants maintain that, although *Uhl* held that the landowner has the burden of taking the necessary steps to have a public road vacated, if the commissioners properly act to vacate a road, such vacation will be effective without any specific request from the landowner. In *Uhl*, the court found that the board of county commissioners had, by resolution in 1889, ordered certain section and county lines, including the section line at issue, to be the center of public highways or county roads which were declared to be sixty feet wide, thirty feet on each side of the section or county line. The court held that owners or purchasers of land lying within the district, knowing that the section lines were burdened with the dedication of a highway thirty feet on each side of the section lines, should take the necessary steps to have the highway vacated if they want to claim the land as their own.

Although the facts of *Uhl* differ from the instant case, the underlying principle is relevant. For the purposes of this motion only, it is accepted that the Road was a public road. It is also undisputed that in 1959, the board of county commissioners rejected Buster Brown's petition to vacate or abandon the Road, and recorded such rejection in its minutes. In 1960, Buster Brown, with full knowledge that the county had refused to vacate or abandon the road, erected a gate north of the cemetery, effectively claiming as his own that portion of the Road over his property. Whether it was this act by Brown which led to the highlighting and "abandon" notations of the 1.3 miles to the north of the cemetery on the highway user maps is conjectural.

The United States argues that the Highway Users' Tax Fund Act, applicable in 1960, provided: "Eighty percent [of the highway users' tax fund] shall be allocated to the counties in proportion to the adjusted mileage of open and used rural roads in each county, excepting mileage of state highways. The adjusted mileage will be determined by applying to the existing mileage of open and used rural roads a factor of difficulty." Colo. Rev.Stat. § 120–12–7(2) (1953) (amended 1963). The receipt of state funds is, therefore, dependent not on the number of miles of roads declared to be county roads (that have not been abandoned or vacated), but on the number of miles of road which are physically open and used by the public. The United States maintains that the notation "abandon" reflects only that the 1.3 miles of the Road north of the cemetery was not open and used, rather than that the county had given up its legal title. The United States relies on the affidavit of Joseph Thompson, employed since 1974 as a planning/grants officer with the Colorado Department of Transportation. Thompson testifies that, every tenth year, inspectors of the Colorado Department of Highways make full inventory inspections, driving every mile of county road reflected on the highway users map as open and used by the public. He asserts that he has spoken with all of the Colorado Department of Highway inspectors who perform these decennial inspections, many of whom did so in 1960 and before. The inspectors informed Thompson that when they encountered a locked gate or other physical obstruction to the road they were inspecting, they would mark its location in their notes, rather than attempt to drive beyond the obstruction. The inspectors then reported the obstruction to the county which decided whether to direct the sheriff to remove it or not. The United States also cites the deposition testimony of Pete Mattivi, who testifies that he remembers a representative of the state "saying that he would not go beyond a gate even if it was a county road." (United States Br.Opp.Defs.' Mot.Summ.J., Ex. 8 at 16.) Also cited is the deposition testimony of Robert Scarrow, that it was possible the word "abandon" on a highway user fund map could indicate nothing more than that he found a locked gate beyond that point. (*Id.*, Ex. 9 at 35.)

Defendants reply that the United States has failed to point to any specific facts that the Road itself was inspected and a gate observed either in 1960 or at any time. They argue that neither Mattivi's nor Scarrow's

testimony relates to an inspection of the Road after Brown erected the gate in 1960. Accepting this, the testimony of Thompson, Scarrow and Mattivi indicates only a possibility that the notation "abandon" on the highlighted 1.3 miles of the Road may not have evidenced the county's intention to abandon title, but rather intention to indicate that no funds could be allocated for those 1.3 miles because they were neither open nor used.

#### IV. *Conclusion.*

In order to find that Garfield County abandoned the Road north of the cemetery in 1960, I must find "evidence of a clear intention to abandon." *Koenig,* 440 P.2d at 157. Based on the above analysis, I find there is a genuine issue as to whether, in 1960, the county had the "clear intention" to give up legal title to the Road. A trial is necessary; the motion for summary judgment is

DENIED.