Mark P. HEATH; Mark Steen; Mi Vida Enterprises, Inc.; Southern Cross Prospecting Company; Gold Reef Mining Company; Deepika Avanti; Virginia Fledderjohn; J. Gordon Erickson; Avanti Family Limited Partnership; Richard T. Heard; and Gold Rex Mining Company, Plaintiffs–Appellants,

v.

Douglas G. PARKER and the Board of County Commissioners of Boulder County, Defendants–Appellees.

No. 99CA2436.

Colorado Court of Appeals, Div. II.

Nov. 24, 2000.

As Modified on Denial of Rehearing Jan. 4, 2001.

Certiorari Denied Sept. 17, 2001.

Windholz & Associates, James A. Windholz, David S. Williamson, William P. Hayashi, Boulder, CO, for Plaintiff–Appellant Mark P. Heath.

Thomas J. Finch, Boulder, CO, for Plaintiffs–Appellants Mark Steen and Mi Vida Enterprises, Inc.

Rodney D. Knutson, Denver, CO, for Plaintiffs–Appellants Southern Cross Prospecting Company and Gold Reef Mining Company.

Law Office of Karl F. Anuta, Karl F. Anuta, Boulder, CO, for Plaintiffs–Appellants Deepika Avanti; Virginia Fledderjohn; J.

Gordon Erickson; Avanti Family Limited Partnership; Richard T. Heard; and Gold Rex Mining Company.

Kenneth D. Robinson, P.C., Kenneth D. Robinson, Boulder, CO, for Defendant–Appellee Douglas G. Parker.

H. Lawrence Hoyt, County Attorney, Leslie Wright Lacy, Assistant County Attorney, Boulder, CO, for Defendant–Appellee Board of County Commissioners of Boulder County.

Opinion by Judge DAVIDSON.

Plaintiffs, Mark P. Heath, Mark Steen, Mi Vida Enterprises, Inc., Southern Cross Prospecting Company, Gold Reef Mining Company, Deepika Avanti, Virginia Fledderjohn, J. Gordon Erickson, Avanti Family Limited Partnership, Richard T. Heard, and Golden Rex Mining Company, appeal from the declaratory judgment entered by the trial court after a bench trial in favor of defendants, Douglas G. Parker and the Board of County Commissioners of Boulder County, and the judgment quieting title in favor of defendant Parker. We affirm in part and reverse in part.

The property in question is an old wagon road (the Road) in Boulder county. The Road originally comprised a portion of the road from the city of Boulder to the town of Gold Hill, running east and west over the northern slope of Bighorn Mountain. In 1887, another road running further to the north (the Shelf Road) was constructed to provide better access from Boulder to Gold Hill. Now, the Road can be entered only from the Shelf Road on the west end, but overgrowth and a steep embankment prevent it from being entered from the east end.

To date, the Road is the only road providing access to several mining claims on Bighorn Mountain, the Rothschild being the easternmost of the claims with sole access from the Road. Another road branching off the Road in a southerly direction (the Spur Road) is the only road providing access to the Crow's Nest, a local recreation site on top of Bighorn Mountain.

Although the Road no longer appears on official county maps, it is indicated on official 1937, 1957, and 1978 United States Geological Survey maps as an unimproved dirt road.

Heath was the original plaintiff in an action to quiet title to the Road. The original suit joined all landowners along the Road. Parker, one of the original defendants, is the owner of the Old England Lode, which is traversed by the Road's western stretch after it turns off the Shelf Road. Prior to trial, Heath and all defendants except Parker negotiated an agreement granting one another mutual access easements to the Road as it crossed their respective properties. A realignment of parties followed, and the county was permitted to intervene as a defendant. At trial, Parker and the county sought to have the Road declared a private road, and Parker sought to quiet title to the portion of the road that ran over his property.

The focus of the trial was whether the two-mile length of the Road was public. The trial court determined that the Road was a public road by virtue of the public's acceptance of a federal statutory grant under R.S. 2477, *see* Act of July 26, 1886, ch. 262, § 8, 14 Stat. 251, 253 (1866), Rev. Stat. § 2477, *formerly codified at* 43 U.S.C. § 932, *repealed by* Federal Land Policy and Management Act of 1976 (FLPMA), Pub.L. No. 94–579, § 706(a), 90 Stat. 2743, 2793 (allowing for a right-of-way for construction of highways over public lands not yet reserved for public uses), but that the Road subsequently had been abandoned. The court also granted Parker a judgment quieting title to the portion of the Road traversing his property.

At trial, as well as on appeal, the parties differed in their assertions as to how the Road became public. Specifically, although plaintiffs did not dispute that the Road became an R.S. 2477 public road, they asserted that it became public in any of three ways: by action of the county commissioners in 1876, *see* R.S. 2477, *supra;* by public prescriptive use, *see* § 43–2–201(1)(c), C.R.S.2000; or pursuant to § 43–1–202, C.R.S 2000 ("All roads and highways which are, on May 4, 1921, by law open to public traffic shall be public highways. . . ."). Defendants disputed that the road was created by the county commissioners or through prescriptive use, but agreed that the road was "created"

sometime before 1876, and was "public" for some period of time thereafter.

■ On appeal, the parties raise numerous issues pertaining to both the creation and alleged abandonment of the Road. However, because we conclude that the trial court's determination that the level and purposes of use were sufficient to establish the Road through public acceptance of the R.S. 2477 grant was correct, *see Brown v. Jolley*, 153 Colo. 530, 387 P.2d 278 (1963) (neither "work" nor government action is required to constitute acceptance of an R.S. 2477 road), the pivotal issue here is whether, as plaintiffs assert, the trial court incorrectly determined that the Road had been abandoned as a public highway. And, because the Road was established through public use, we need not address the abandonment of a road created through public prescriptive use.

We conclude that the portion of the Road from the easternmost end of the Rothschild claim west to the Shelf Road has not been abandoned.

Before we turn to our analysis, we note that the issues ruled on by the trial court, and as framed by the parties in this appeal, relate only to the question whether the Road was public and, if so, had it been abandoned. Consequently, issues raised by defendants in their petition for rehearing which pertain to remedies available to a landlocked property owner when a public road has previously been abandoned or vacated are not within the scope of this opinion.

## I.

■ Whether abandonment of a public road has taken place is a question of fact. *See Shively v. Board of County Commissioners*, 159 Colo. 353, 411 P.2d 782 (1966). The burden of establishing abandonment is on the party asserting abandonment. *See Korf v. Itten*, 64 Colo. 3, 169 P. 148 (1917). We agree with plaintiffs' contention that the trial court's finding of abandonment is not supported by the record.

■ Abandonment of a public road requires proof of intent to abandon and proof of nonuse. *See Koenig v. Gaines*, 165 Colo.

371, 440 P.2d 155 (1968); *Uhl v. McEndaffer*, 123 Colo. 69, 225 P.2d 839 (1950).

■ An analysis of the intent factor focuses on both official and public acts, while an analysis of the nonuse factor focuses on public acts alone. *See Koenig v. Gaines, supra*, 165 Colo. at 376, 440 P.2d at 157 ("nonuse ... reflects an intention or determination to abandon on the part of the public"); see also *United States v. W.H.I., Inc.*, 855 F.Supp. 1207 (D.Colo.1994) (road blocked to public use since 1960 indicated nonuse).

In *Koenig v. Gaines, supra*, the supreme court held that nonuse of a former road for 30 years, combined with the construction of an alternate road, and primary access to the plaintiff's mining claims via another road, supported a finding of abandonment of the original road. Here, the trial court found that the county had never formally vacated the Road, but, citing *Koenig*, it concluded that both the county and the public had demonstrated a clear intent to abandon it. We do not agree.

## A.

In its findings, the trial court acknowledged that the county originally had recognized the Road as the means of access to mining claims on and around the Bighorn Mountain as well as for travel between Boulder and Gold Hill. However, the court determined that, when the county accepted the 1887 petition to change the location of the Road to the Shelf Road, subsequently "ignored [the Road] completely," and did not feature the Road on county maps, it had evidenced an intent to abandon the Road in favor of the Shelf Road.

■ Plaintiffs argue that, even if, as the trial court found, the county intended to abandon the Road in favor of the Shelf Road for purposes of travel from Boulder to Gold Hill, the court did not adequately consider the use of the Road for access to mining claims. Specifically, because the Road was used for access to mining claims at the time the Shelf Road was constructed—and still is used to access those same claims—an intent to abandon the Road cannot be inferred from the construction of another road and the

county's subsequent inattention to the Road. We agree.

Once a road is established as a public road, it may be used for all uses allowed to the public under the laws of the state. *See Lovvorn v. Salisbury*, 701 P.2d 142 (Colo.App.1985). Thus, the use of the Road for mining and access was no less legitimate than its use as a thoroughfare between Boulder and Gold Hill. *See* Olson, *The R.S. 2477 Right of Way Dispute: Constructing a Solution*, 27 Envtl. L. 289, 292–93 (1997) (purpose of R.S. 2477 was to provide access rights to land claims of miners, settlers, and local governments). Furthermore, a right of access is necessary to satisfactory and beneficial use of land. *See, e.g., Denver v. Bayer*, 7 Colo. 113, 2 P. 6 (1883).

Moreover, a "highway" includes, but is not necessarily, a route for the travelling public from one point to another. Although in some jurisdictions a highway is statutorily defined as requiring public vehicular travel, *see Lee v. State*, 997 P.2d 138 (Nev.2000), Colorado has adopted a broader definition of what constitutes a "road" or "highway". *See* § 43–2–201, C.R.S.2000; *Simon v. Pettit*, 687 P.2d 1299 (Colo.1984) (depending on the context, a footpath may be considered a highway). Under R.S. 2477, this includes roads created by the "passage of wagons, etc." *See Central Pacific Ry. v. Alameda County*, 284 U.S. 463, 52 S.Ct. 225, 76 L.Ed. 402 (1932).

Accordingly, a county cannot, without compensation, formally abandon a public road if such action would deprive abutting landowners of access to their property. *See* § 43–2–303(2)(a), C.R.S.2000; see also *Leach v. Manhart*, 102 Colo. 129, 133, 77 P.2d 652, 653 (1938) (a property owner "has a right to access to other roads and the public has a right of access to him"); *Ord v. Fugate*, 207 Va. 752, 152 S.E.2d 54 (1967); 2 B.K. Elliott & W.F. Elliott, *Law of Roads & Streets* § 1180 (4th ed.1926) ("where the vacation of a highway will cause special injury to an adjoining owner he is entitled to compensation").

For similar reasons, the availability of substitute access provided by another road has usually been a relevant, if not critical, factor in the determination of an intent to abandon. *See Koenig v. Gaines, supra; cf. Kruse v. Ashford*, 174 Misc. 367, 20 N.Y.S.2d 852 (N.Y.Sup.1940); *Smith v. Board of Supervisors*, 201 Va. 87, 109 S.E.2d 501 (Va.1959); *United States v. W.H.I., Inc., supra*.

Here, it is undisputed that, at the time of the Shelf Road's construction in 1887, entry onto mining claims had already occurred on the mountain, and the only surface access to these mining claims was via the Road. Specifically, the documentary evidence submitted at trial showed that the Shelf Road did not provide substitute access to then-existing claims crossed by the Road—Chinook, Sunbeam, American Flag, and Rothschild—nor to other claims next to the Road but not near the Shelf Road—O.K., Ozark, Morning Star, and Denver View. Neither did the Shelf Road provide access to the top of Bighorn Mountain and the Crow's Nest. *See Burks v. Verschuur*, 35 Colo.App. 121, 532 P.2d 757 (1974) (appellate court is not bound by the trial court's findings relative to evidence consisting of written documents).

In contrast to *Koenig v. Gaines, supra*, in which an alternate road provided access to the plaintiff's mining claims, here, although the county built the Shelf Road to provide better thoroughfare to Gold Hill, it did not construct a similar road to provide substitute access to the mining claims. *See* R.S. 2477, *supra; cf.* Olson, *The R.S. 2477 Right of Way Dispute: Constructing a Solution, supra*.

Nevertheless, defendants assert, because some of the claims were unpatented at the time of the Shelf Road construction in 1887, the resultant deprivation of access was inconsequential. To the contrary, however, reasonable surface use, including access, is part of the "bundle of sticks" of mineral claim property rights, including unpatented claims. *See* Schuster & Dierking, *Future Prospects for Mining & Public Land Management: The Federal "Retention–Disposal" Policy Enters The Twenty–First Century*, 26 Env. L. 489, 507 (1996); *Murray Perkins, International Silica Corp.*, 116 I.B.L.A. 288, 294 (1990). Indeed, the policy behind the R.S. 2477 grant, under which the Road was created, specifically was to promote access, development, and settlement of otherwise re-

mote areas of the United States. *See, e.g., Wilkenson v. Department of Interior,* 634 F.Supp. 1265 (D.Colo.1986).

### B.

We also disagree with the trial court's determination of nonuse. As to that element, the trial court found that the public had abandoned the Road "as a road for its public convenience." Insofar as the trial court was referring to the "public" as those who had used the Road to travel from Boulder to Gold Hill, we agree. As discussed, once the Shelf Road was constructed, the record indicates that this segment of the public no longer used the Road.

However, the trial court also found that the Road simultaneously had been used by some portion of the public for recreation and prospecting on Bighorn Mountain and continues to be used for recreational purposes today. Even after the Shelf Road's construction in 1887, as found by the trial court, individuals holding patented and unpatented claims continued to use the Road through at least 1905. As the court also found, recreational use dated back to at least the 1920s, and continues through the present. Further, the record shows that Parker's several attempts to block the public from the use of the Road were generally ineffective. Indeed, the record contains ample evidence to the effect that pedestrian and vehicular traffic on the Road has not abated, and that both the property owners and the general public continue to use the Road.

█ We conclude that, under circumstances such as these, even occasional use of a public road for access purposes, in the absence of an alternative road, precludes a finding of abandonment. *See Leach v Manhart, supra; Gilpin County v. Ball,* 506 P.2d 413 (Colo.App.1973) (not selected for official publication) (no finding of abandonment despite non-use for 20 years); see also *Taggart v. Highway Board,* 115 Idaho 816, 771 P.2d 37 (1988); *O'Dea v. State,* 16 Neb. 241, 20 N.W. 299 (1884) (there can be no abandonment by nonuse so long as any portion of the public continues to use the road as a highway); *cf. Koenig v. Gaines, supra* (nonuse of a road, except for occasional, random, and infrequent pedestrian traffic, and existence of alternative road providing reasonable and substitute access to the plaintiff's mining claims, adequate to support a finding of abandonment); *Boss v. Deak,* 201 Ind. 446, 169 N.E. 673 (1930) (a highway may be vacated because of its comparative uselessness by reason of the construction of other roads).

█ Furthermore, even when an alternate road has been constructed, if an earlier built road retains some use, it is not considered abandoned. *See Rutledge v. Staner,* 9 S.W.3d 469 (Tex.App.1999); *Kelly Nail & Iron Co. v. Lawrence Furnace Co.,* 46 Ohio St. 544, 22 N.E. 639 (1889) (no finding of abandonment despite public's lack of maintenance, relative lack of use, and construction of substitute road); *Anderson v. Richards,* 96 Nev. 318, 608 P.2d 1096 (1980) (public road may not be deemed abandoned because of a substantial reduction in the number of people who continue to make use of it); *Compton v. Thacker,* 474 S.W.2d 570 (Tex. App.1971) (to support a finding of abandonment, use of a public road must be "practically impossible"); *cf. Sarver v. County of Allen,* 582 S.W.2d 40 (Ky.1979); *Commonwealth v. Boston & Albany R. Co.,* 150 Mass. 174, 22 N.E. 913 (1889) (new road intended as substitute for old road, and no landowner was affected by the change).

### II.

There is no dispute that berm and mature trees block the Road past the Rothschild claim on the far eastern portion of the Road, and no party appears to dispute that this easternmost portion of the Road between the Rothschild claim and the Shelf Road has been abandoned.

Based upon our disposition, we need not address the other issues raised by plaintiffs.

The judgment declaring that the portion of the Road east of the Rothschild claim is not public is affirmed. The judgment declaring that the remaining portion of the Road is not public and quieting title in the portion of the Road traversing Parker's property is reversed, and the cause is remanded to the

trial court to amend the judgment accordingly.

VOGT and STERNBERG *, JJ., concur.