Arthur P. MARTINI; Karen Martini; William Rich; Maria Rich; Ray Kilmer; Judy Kilmer; Ann Wallis; Richard Bowman; Mary Bowman; and Pioneer Lookout Water District, a Colorado special district, Petitioners,

v.

Ray SMITH, Respondent.

No. 00SC685.

Supreme Court of Colorado, En Banc.

March 11, 2002.

Hanes & Schutz, P.C., Richard W. Hanes, Timothy J. Schutz, Colorado Springs, Colorado, Attorneys for Petitioners.

Winston & Winston, P.C., Joseph R. Winston, Haydn Winston, Colorado Springs, Colorado, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

This case centers upon a dispute concerning the ownership and permissible use of Simpson Road (the Road), which adjoins the plaintiffs' properties. The Road was first dedicated to public use in a subdivision plat in 1955. The subdivision was, at that time, part of the Town of Palmer Lake. In 1964, the Town de-annexed the subdivision containing the Road. The trial court in this case found, as a matter of law, that upon de-annexation, the Road "ceased existence as a public road" and title vested in Plaintiffs [1] Arthur P. Martini, Karen Martini, William Rich, Maria Rich, Ray Kilmer, Judy Kilmer, Ann Wallis, Richard Bowman, Mary Bowman, and Pioneer Lookout Water District as the abutting property owners.

The court of appeals concluded that the trial court erred in granting summary judgment to Plaintiffs on the basis of the de-annexation. *Martini v. Smith,* 18 P.3d 776, 778 (Colo.App.2000). Specifically, the court of appeals held that an ordinance purporting to de-annex a subdivision does not conclusively vacate the public roadways within the subdivision. That court remanded the case to the trial court to resolve the factual issue of whether the county has abandoned the Road. Plaintiffs appealed and we granted certiorari.[2]

We agree with the court of appeals and hold that a de-annexation ordinance does not, by itself, vacate the public roadways in the de-annexed area. We further hold that the disclaimer of El Paso County in this court proceeding also does not suffice as conclusive evidence of abandonment. Hence, we affirm the court of appeals in overturning the trial court and thus remand the case to the trial court for further proceedings.

I.

At issue is a twenty-five foot wide strip of property bordering the southern edge of the Pioneer Lookout Subdivision (the Subdivi-

---

**1.** Although the Plaintiffs are the petitioners in this court, because they were the plaintiffs in the trial court, we refer to them as the Plaintiffs throughout this opinion.

**2.** We granted certiorari on the following issues:
(1) Whether the court of appeals erred in concluding that the De-annexation Ordinance at issue did not operate to vacate the disputed road.
(2) Whether the court of appeals erred in failing to conclude that the disputed road has been abandoned by virtue of forty plus years of nonuse, the town's De-annexation Ordinance, and the county's filing of an express disclaimer of interest in the disputed road.

sion) in El Paso County (the County), Colorado.[3] The original platting of the Subdivision designated the strip as Simpson Road. The plat of the Subdivision contained a statement dedicating the platted roads to public use. The Town of Palmer Lake accepted the plat in 1955; however, Plaintiffs assert that Palmer Lake never improved or maintained the Road. In 1964, Palmer Lake de-annexed the Subdivision, enacting an ordinance (the Ordinance) stating that "[a]ll of that tract or territory . . . shown in the plat of PIONEER LOOKOUT SUBDIVISION . . . is (each parcel thereof) hereby detached and disconnected from the said Town of Palmer Lake, Colorado."

In 1969, the owners of the Subdivision requested the County to accept maintenance of three of the roads within the Subdivision. The request for acceptance did not include Simpson Road. The County agreed to maintain the three roads. El Paso County has never accepted, improved, or maintained the disputed Road. However, the record contains a copy of the El Paso County assessor's map delineating Simpson Road as a roadway. Further, it contains the 1998 El Paso County road and improvement plan listing Simpson Road as an unmaintained El Paso County Road System road and depicting the Road as an unimproved roadway.

The southern boundaries of Plaintiffs' properties abut the northern boundary of the Road. The northern edge of the Road forms the southern boundary of the Subdivision. Defendant[4] owns property to the south and west of the Subdivision; the northern border of his property is adjacent to the southern boundary of the Road, separated from the Subdivision by a white rail fence.

The former owners of Defendant's property historically accessed that property via roads on the south side and the northeast side. While Plaintiffs assert that no vehicular traffic utilized the Road prior to the summer of 1998, Defendant contends that he had been using the Road since 1975. Both parties agree, however, that in 1998, Defendant began grading the Road and refused to comply with Plaintiffs' demands that he cease such activity. In response, Plaintiffs initiated a lawsuit against Defendant seeking a judicial determination that they owned the Road by virtue of the vacation and abandonment of the Road, or, alternatively, through adverse possession. The Plaintiffs also asserted claims for trespass and injunctive relief. In their claims, Plaintiffs named both Defendant and El Paso County as defendants.

In response to the complaint, on October 6, 1998, El Paso County filed a disclaimer under C.R.C.P. 105(c) stating that it "hereby disclaims all right, title and interest in and to the property . . . denoted as the 'Former Simpson Road.'" Defendant responded by filing a counterclaim asserting that he owned one-half of the Road under Colorado's vacation statute, section 43–2–301, 11 C.R.S. (2001), or, alternatively, that he had acquired rights in the Road by adverse possession.

The parties filed cross-motions for summary judgment on their claims to ownership of the Road. The trial court granted Plaintiffs' summary judgment motion, finding that Palmer Lake vacated the Road upon de-annexation and that, at that point, the Road "ceased existence as a public road." The trial court found that as a result of the vacation, pursuant to section 43–2–302(1)(a), 11 C.R.S. (2001), Plaintiffs, not Defendant, owned the Road. Specifically, the trial court found that Plaintiffs were "the owners, in fee, of those portions of the former Simpson Road that abut each of their respective southerly lot lines and that lie between the extended side lot lines of each of said lots and that the Defendant has no right, title or interest in that land." This appeal followed.

## II.

### A.

We review here the trial court's entry of summary judgment in favor of the

---

**3.** Except as otherwise noted, the facts we recite come from the undisputed facts presented by the parties. The parties also presented numerous disputed facts supported by affidavits, letters, maps, plats, and pictures mainly centering around the public use, especially Defendant's use and maintenance, of the Road.

**4.** Although the Defendant is the respondent in this court, because he was the defendant in the trial court, we refer to him as the Defendant throughout this opinion.

Plaintiffs. Although the standard for analysis of summary judgment is well-established and almost axiomatic, we set it forth in order to frame the question we must address. Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue as to any material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608, 611 (Colo.1998); *see also Compass Ins. Co. v. City Of Littleton,* 984 P.2d 606, 613 (Colo.1999). The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Compass Ins. Co.,* 984 P.2d at 613.

■ An appellate court's review of a trial court's order granting or denying a motion for summary judgment is de novo. *Vail/Arrowhead, Inc.,* 954 P.2d at 611; *see also Joe Dickerson & Assocs., L.L.C. v. Dittmar,* 34 P.3d 995, 1003 (Colo.2001) (holding that an appellate court reviews a trial court's granting of a summary judgment motion de novo because it is a question of law); *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1250 (Colo.1996) (" 'All summary judgments are rulings of law in the sense that they may not rest on the resolution of disputed facts. We recognize this by our de novo standard of reviewing summary judgments.' ").

The trial court in this case considered numerous claims, defenses, counter claims, and a motion to dismiss. The trial court received disclaimers of interest in the property from El Paso County and numerous utilities.

## B.

The first question is whether the de-annexation ordinance vacated the Road. It is a matter of first impression before this court.

We begin our analysis with the subdivision statutes that governed dedication of public roads within subdivisions at the time of the dedication. Neither party disputes that the Subdivision owners properly dedicated the roads in the Subdivision to public use and that Palmer Lake properly accepted that dedication. Therefore, the legal implications of the dedication must rest initially on the statutes in effect at the time such dedication occurred.

Section 139–1–7, 6 C.R.S. (1953), entitled "Public property dedicated" provided: "All avenues, streets, . . . designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property, and the fee thereof be vested in such city or town." [5]

In addition, section 139–18–1, 6 C.R.S. (1953), specified:

> In all cases in which . . . towns have been heretofore organized, and in which lands embraced in the corporate area have been conveyed or known by . . . streets, . . . or in which any such . . . streets, . . . or other divisions of land have been known as such, by reference to some previous plat or map, . . . and when it appears desirable by the owners and proprietors of any such lands to determine the location and boundaries thereof, a plat of the same may be filed as specified in this article.

The article continued by stating that any plat filed should embrace in its description all streets and the width thereof. § 139–18–2, 6 C.R.S. (1953). Further, the article required that the owners of the lands must acknowledge any plat so filed, and, if the plat embraces a description of a street held by the town for a public use, the mayor, on behalf of the town, should acknowledge the plat, when authorized by the resolution of the city council. §§ 139–18–3, –4, 6 C.R.S. (1953). Finally, section 139–18–9, 6 C.R.S. (1953), stipulated:

> Upon the filing of any such plat in the office of the recorder of the county, the boundaries of contiguous divisions of land, described in section 139–18–2, upon any such plat, shall be determined and settled as indicated in the plat. All the other

---

**5.** We note that section 31–23–107, 9 C.R.S. (2001), the current equivalent of section 139–1–7, similarly provides: "All streets . . . designated or described as for public use on the map or plat of any city or town or of any addition made to such city or town are public property and the fee title thereto vested in such city or town."

matters indicated upon said plat, shall be deemed binding upon the parties acknowledging such plat. For the purpose of description in any instrument affecting title to any land described in any such plat, the designation given upon any such plat shall be sufficient.

§ 139–18–9.

In this case, the owners of the parcel incorporated as Pioneer Lookout Subdivision dedicated the roads in the Subdivision to the public use. Further, in accordance with sections 139–18–3 and –4, the owners acknowledged the incorporation of the Subdivision into the Town of Palmer Lake in their statements of dedication made upon the plat. The mayor and president of the town council also acknowledged that "[p]ursuant to a resolution made and adopted by the Town Council of Palmer Lake, ... on this 22 day of October A.D.1955, the Plat of PIONEER LOOKOUT Subdivision is hereby accepted." Therefore, under section 139–18–9, the dedication of the streets to the public use was binding upon both the Town of Palmer Lake and the owners of the Subdivision. Finally, the plat was filed with the El Paso County Clerk and Recorder in accordance with sections 139–18–3 and –9.

■ Because the record indicates that the plat was in compliance with the relevant statutes, the fee title to the streets dedicated to the public use vested in the Town of Palmer Lake. *See City of Denver v. Clements*, 3 Colo. 472, 480 (1877) (stating that the "moment the plat of a city or an addition thereto is made, filed and recorded by the proprietor thereof in compliance with the statute, the fee of all the streets ... reserved therein to the use of the public, vests in such city"); *see also Buell v. Sears, Roebuck Co.*, 205 F.Supp. 865, 870–72 (D.Colo.1962) (noting that when a street is dedicated for the public use under section 139–1–7, current section 31–23–107, 9 C.R.S. (2001), it becomes public property with fee title vested in the city), *aff'd*, 321 F.2d 468 (10th Cir.1963).

**6.** Both section 120–14–2(1)(b) and that section's modern equivalent 43–2–302(1)(a), 11 C.R.S. (2001), provide that upon effective vacation of a roadway constituting the exterior boundary of a

■ Hence, as of 1955, the Road was a properly dedicated public roadway. However, in 1964, the Town of Palmer Lake de-annexed the Subdivision area, and we must determine what effect such de-annexation had upon the Road. A town, municipality, or county may, of course, vacate streets or roadways within its boundaries. *City of Colo. Springs v. Crumb*, 148 Colo. 32, 35, 364 P.2d 1053, 1054 (1961). Upon proper vacation, a town or county is divested of all right, title, or interest in the Roadway. § 120–14–3, 6 C.R.S. (1963) (the equivalent of the current section 43–2–303, 11 C.R.S. (2001)).[6]

The statutes governing the answer to this question are necessarily those that were in effect in 1964, when the de-annexation occurred. At that time, the statutes prescribed various methods of vacating roads, to wit:

(1)(a) All right, title or interest ... of an incorporated town ... in and to any roadway shall be divested upon vacation of such roadway by any of the following methods:

(b) The city council or other similar authority of a city or town by ordinance may vacate any roadway or part thereof located within the corporate limits of said city or town, subject to the provisions of the charter of such municipal corporation and the constitution and statutes of the state of Colorado.

§ 120–14–3(1)(a), (b).

Furthermore, the statute mandated that a roadway could not be vacated if such vacation would leave any land adjoining said roadway without an established public road or private-access easement connecting that land with another established public road. § 120–14–3(2), 6 C.R.S. (1963).

The Ordinance for the Disconnection of Territory from the Town of Palmer Lake here at issue provided:

BE IT ORDAINED by the Board of Trustees of the Town of Palmer Lake, County of El Paso, State of Colorado:

subdivision, title to that roadway shall vest in the abutting property owners within a subdivision if, at the time the roadway was dedicated to the public use, it was part of the subdivided land.

*Section 1.* That the Following described land:

*Parcel 1:*

All of that tract or territory located within the Town of Palmer Lake, El Paso County, Colorado, and more particularly described and shown in the plat of PIONEER LOOKOUT SUBDIVISION, FILING NO. 1 is recorded in Plat Book X at page 42 of the records in the office of the Clerk and Recorder of El Paso County, Colorado,

. . .

be and it is (each parcel thereof) hereby detached and disconnected from the said Town of Palmer Lake, Colorado.

The Ordinance was approved by the board of trustees of the municipality and signed by the mayor in compliance with the mandates of section 120–14–3(1)(a) and (b).

■ The clear question then becomes the effect of the Ordinance. It did not comport with the statutes concerning vacation, in that it did not include any language of vacation or language otherwise indicating that the city intended to vacate the public roadways and return them to private ownership. The de-annexation ordinance merely "detached and disconnected" each parcel of the Subdivision from Palmer Lake. It made no mention of the roadways. The Ordinance did not: (1) identify the streets with particularity; (2) include language of vacation; or (3) address the question of whether it would leave lands without access in violation of the statute.

■ Because a dedication to public use necessarily implicates many interested parties, this court has always required strict adherence to the vacation statutes in order to effect return of a public roadway to private usage. If a governing body does not follow the statutory provisions for vacating the dedication of a public roadway as set out in the statutes, the roadway remains available for the public use. *Uhl v. McEndaffer,* 123 Colo. 69, 75, 225 P.2d 839, 843 (1950).

■ Annexation is a statutory proceeding designed to vest a governmental authority with the right to tax certain residents and the parallel responsibility to provide government services to those same residents. *See* § 31–12–102, 9 C.R.S. (2001). It follows

from that purpose that a de-annexation of a certain area would free the governmental authority of the responsibility to provide services to that area, and would deprive it of the right to tax those residents. The power to detach territory from a town is analogous to, and in the same class with, the power to attach property. *Town of Greenwood Vill. v. Heckendorf,* 126 Colo. 180, 187, 247 P.2d 678, 682 (1952).

Our precedent does suggest that a de-annexation or disconnection of one piece of property from the adjoining municipality can be defeated by a showing that the municipality has maintained the streets in the annexed area and maintained them for municipal purposes. *See Morrison v. Town of Lafayette,* 67 Colo. 220, 223–24, 184 P. 301, 303 (1919); *Adams v. Town of Gunnison,* 62 Colo. 114, 115–16, 160 P. 1033, 1034 (1916).

Other states addressing the issue have determined that when municipal limits change, roadways do not revert to private ownership, but rather merely pass from one political subdivision of the state to the other on the basis of the roadways' location within the new boundaries; the political subdivision in which the roadway is located obtains control over the road for taxing and maintenance purposes. *E.g.,* 2A Eugene McQuillin, *Municipal Corporations* § 7.46.70, at 67 (3d ed.1996); 33 Dunnell Minnesota Digest *Municipal Corporations* § 9.01 (4th ed. 2001) ("When a village is incorporated and includes within its limits part of a county road, that part of the road becomes, as a general rule, a village street, subject to the control of the village.").

■ That approach accords with the mandates of Colorado's 1963 statute, section 120–14–3(1)(b), which was in effect when the de-annexation ordinance at issue was enacted. The statute provides that a town may vacate any roadway, or portion of roadway, located within the corporate limits of that town; a county may only vacate those roadways that are located entirely within the county and are not within the limits of a city or town. § 120–14–3(1)(c). It follows that if a change in the city boundary has the effect of omitting from its jurisdiction a previously

included roadway, control over that roadway defaults to the political subdivision in which the street is then located.

Therefore, because the Ordinance did not set out any specific intent to vacate, or address issues of land-locked property; and because it purported only to relinquish the rights and responsibilities attendant upon annexation, we hold that the Ordinance altering Palmer Lake's city limits did not vacate the Road but rather merely transferred control over the Road to El Paso County.

### III.

Since we have concluded that the de-annexation ordinance did not vacate the road, control passed to El Paso County. Therefore, we must now address the effect of El Paso County's disclaimer of interest filed in this action.[7] El Paso County purportedly disclaimed its interest in this litigation by means of a C.R.C.P. 105(c) disclaimer. Plaintiffs argue that the County's express disavowal of "all right, title and interest in and to ... the 'Former Simpson Road'" should preclude it from asserting any future rights over the Road. They contend that this court should interpret Rule 105(c) in accordance with our holding in *Vail/Arrowhead, Inc. v. District Court,* 954 P.2d 608, 611 (Colo.1998), wherein a litigant who had filed a disclaimer of interest under C.R.C.P. 105(f)(3) was forever barred from making further claims to that property. Plaintiffs assert that, unless the disclaimer acts as a bar to all future claims on the subject property, it is devoid of legal significance.

First, we note that the record indicates that there was no lis pendens filed on the Road and therefore the disclaimer filed by the County was properly a Rule 105(c) disclaimer and not a Rule 105(f)(3) disclaimer.

C.R.C.P. 105(c) provides: "If any defendant in such action disclaims in his answer any interest in the property or allows judgment to be taken against him without answer, the plaintiff shall not recover costs against him...." Although this court has

never addressed the effect of a disclaimer of property under C.R.C.P. 105(c), the Plaintiffs are correct that we have held that a disclaimer of an interest in property affected by notice of lis pendens under C.R.C.P. 105(f)(3) operates to bar all claims to interest in the property pursuant to the terms of the disclaimer. *Vail/Arrowhead, Inc.,* 954 P.2d at 612. However, C.R.C.P. 105(f)(3), by its express terms, provides for the jurisdictional bar. *Id.* at 611 (citing *Mahaffey v. Barnhill,* 855 P.2d 847, 849 (Colo.1993)).

Hence, we begin with the proposition that the Rule at issue does not provide a specific bar. Much more importantly, however, we conclude that we must analyze the disclaimer in light of vacation strictures, just as we analyzed de-annexation in light of those same strictures.

In prescribing methods of vacation for a county, section 43–2–303(1)(b), 11 C.R.S. (2001), states: [8]

(1) All right, title, or interest of a county ... in and to any roadway shall be divested upon vacation of such roadway by any of the following methods:

. . . .

(b) The board of county commissioners of any county may vacate any roadway or any part thereof located entirely within said county if such roadway is not within the limits of any city or town.

Section 43–2–303(2)(b) continues by providing:

If any roadway has been established as a county road at any time, such roadway shall not be vacated by any method other than a resolution approved by the board of county commissioners of the county. No later than ten days prior to any county commissioner meeting at which a resolution to vacate a county roadway is to be presented, the county commissioners shall mail a notice by first-class mail to the last-known address of each landowner who owns one acre or more of land adjacent to the roadway. Such notice shall indicate

---

7. Because the trial court concluded that the De-annexation Ordinance effectively vacated the Road, it never reached these issues.

8. For purposes of analyzing the disclaimer, we apply the vacation statutes in effect at the time the County filed the disclaimer.

the time and place of the county commissioner meeting and shall indicate that a resolution to vacate the county roadway will be presented at the meeting.

Finally, section 43–2–303(2)(e) details an exception to the requirements of section 43–2–303(2)(b): "Paragraph[ ](b) . . . of this subsection (2) shall not apply to any roadway that has been established but has not been used as a roadway after such establishment."

Thus, the strict requirements of the vacation statute only apply if the roadway has been established and used as a public road. They do not apply to a roadway that has been established but not used after such establishment. Hence, the first issue is whether the Road was used after its dedication. If the roadway exists as a public road that has been used for that purpose, then the governing body must follow the procedures of the statute to achieve vacation.

■■■ If the Road is a public road that has been used as such, then a disclaimer under the procedural provisions of C.R.C.P. 105(c) cannot operate to vacate the Road. Procedural rules may not abridge, enlarge, or modify the substantive rights of any litigants. *Fastenau v. Engel*, 129 Colo. 440, 445, 270 P.2d 1019, 1021 (1954) (holding that C.R.P.C. 105 made no change to substantive law because, although our court has the power to prescribe procedural rules in civil cases, such rules may not abridge, enlarge, or modify the substantive rights of the litigants). Here, if the County were allowed to disclaim its interest in the Road under C.R.P.C. 105, it would effect a vacation of the Road without complying with the mandates of section 43–2–303(2)(b), thereby eviscerating the substantive rights provided to the public therein. Therefore, as a matter of law, the disclaimer cannot vacate an otherwise valid public road.

## IV.

We now return to the facts of this case to identify the remaining issues. First, there is a fundamental dispute of fact between Plaintiffs and Defendant regarding public use of the Road. The outcome of that dispute will determine the import of the disclaimer as well as the ultimate disposition of Plaintiffs'

assertions. The Plaintiffs claim that the Road has not been used by the public since its original platting, more than forty-five years ago. Defendant contends that he and other members of the public have made use of the roadway during that time. The trial court must resolve that factual controversy in order to determine whether this is a public road entitled to the protections of the vacation statute.

Therefore, on remand, the trial court must first determine whether there was any public use after establishment of the Road and prior to filing of the disclaimer. If it concludes that the public has ever used the Road, then the County must comply with the specific mandates of section 43–2–303(2)(b) in order to implement a vacation. In that event, because the County's disclaimer of interest did not conform with the specific form and notice requirements of section 43–2–303(2)(b), it could not effect a vacation of the Road, and the court should conduct an abandonment analysis to determine whether the County and the public have abandoned the Road.

Alternatively, if the trial court finds that the Road has not been used as a roadway subsequent to its establishment, then the trial court should make an initial determination as to whether a vacation of the Road would leave any land adjoining said roadway without an established public road or private-access agreement under the terms of section 43–2–303(2)(a). If the public has not used the Road as a roadway after its establishment and no parcel is left without access, a vacation of the Road need only comport with the requirements of section 43–2–303(1)(a). Because the County filed the disclaimer of interest acting through the board of county commissioners as mandated by section 43–2–303(1)(a), in these circumstances, the disclaimer would effect a vacation of the Road.

In contrast, if the trial court determines that a vacation would leave any property without an established public road or private-access agreement as required by section 43–2–303(2)(a), then the County's disclaimer of interest could not constitute a vacation. Such a finding would again require the trial court to conduct an abandonment analysis to decide whether the County and the public

have abandoned the Road. In that context, the trial court must make the findings necessary to determine whether there is (1) adequate proof of intent to abandon by the County, and (2) proof of nonuse by the public. *Koenig v. Gaines,* 165 Colo. 371, 376, 440 P.2d 155, 157 (1968); *Uhl,* 123 Colo. at 75–76, 225 P.2d at 843; *Heath v. Parker,* 30 P.3d 746, 749 (Colo.App.2000).

## V.

Therefore, we affirm the judgment of the court of appeals reversing the trial court summary judgment order in favor of the Plaintiffs. We return this case to the court of appeals for remand to the trial court for further proceedings consistent with this opinion.