**BOARD OF COUNTY COMMISSIONERS of the COUNTY OF MORGAN, State of Colorado, Plaintiff–Appellee,**

v.

**Elmer KOBOBEL and Mariam Kobobel, Defendants–Appellants,**

and

**Wade E. Castor, E. Todd Castor, Karen S. Kelley, and Riverview Cemetery Association, Defendants.**

No. 01CA2450.

Colorado Court of Appeals, Div. I.

Dec. 19, 2002.

Certiorari Denied July 28, 2003.

George N. Monsson, County Attorney, Fort Morgan, Colorado, for Plaintiff–Appellee.

Anderson and Chapin, P.C., Robert B. Chapin, Brush, Colorado, for Defendants–Appellants.

No Appearance for Defendants.

Opinion by Judge MARQUEZ.

Defendants, Elmer and Mariam Kobobel, appeal the summary judgment entered in favor of plaintiff, Board of County Commissioners of the County of Morgan, declaring a road along the northern boundary of Kobobels' property to be a public road. We reverse and remand for further proceedings.

According to the materials presented for summary judgment, Kobobels are the owners of Section 15, Township 4 North, Range 58 West of the 6th P.M., in Morgan County. Section 10 is immediately north of Section 15. Defendants Wade E. Castor and E. Todd Castor are the owners of the southwest quarter of Section 10. Defendant Karen S. Kelley owns the southwest quarter of the southeast quarter of Section 10, and the inactive Riverview Cemetery Association owns the southeast quarter of the southeast quarter of Section 10.

At issue here is a road allegedly located along the section line between Sections 10 and 15. The western half of the alleged road was the subject of a 1902 road petition, which was accepted by the county. The eastern half of the alleged road is a two-track field lane on Kobobels' property running east and west immediately south of the section line.

In addition to the east-west road, there was a petition in 1902 to create a north-south road through Sections 10 and 15 as well, but that and other roads were realigned in the mid–1930s. Instead of passing through the center of Sections 10 and 15, that road now angles from the center of the north side of Section 10 in a southwesterly direction until it runs along the western edge of Sections 10 and 15.

In 1998, the Kobobels erected a locked gate at the west end of the existing road lying on their side of the section line and excavated ditches across the road.

Plaintiff brought this action to declare the road at issue a public road and to enjoin the Kobobels from obstructing it. The court determined there were no genuine issues of material fact and granted plaintiff's motion for summary judgment and request for injunctive relief. In so ruling, the court concluded that the western portion of the road to a point thirty feet east of the north-south center line of Sections 10 and 15

> [r]emained part of the primary county road net in this area from 1902 to the mid–1930s. The road was in use on May 4, 1921. Therefore, this portion of the road in question is a public road because it has been properly dedicated to Morgan County and was open to public traffic on May 4, 1921 pursuant to Section 43–1–202 C.R.S.

The court also concluded that the road was not abandoned or vacated and that abandonment would leave Kelley and the cemetery without access to a public road.

## I.   Standard of Review

Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini v. Smith*, 42 P.3d 629 (Colo. 2002). An appellate court reviews de novo a trial court's order granting summary judg-

ment. *Vail/Arrowhead, Inc. v. District Court*, 954 P.2d 608 (Colo.1998).

## II.   Evidence Not Before the Trial Court

■ As a threshold matter, plaintiff argues that Elmer Kobobel's deposition was not before the trial court and should be disregarded on appeal. We agree.

■ Arguments and evidence not presented to the trial court in connection with the motion for summary judgment will not be considered on appeal. *See Timm v. Reitz*, 39 P.3d 1252 (Colo.App.2001).

Here, in support of its motion for summary judgment, plaintiff submitted a number of documents. However, the Kobobels submitted only an affidavit and supplemental affidavit by Elmer Kobobel. Plaintiff also submitted supplemental affidavits and copies of records, and the Kobobels responded with additional authority, but did not include Elmer Kobobel's deposition.

Plaintiff filed a motion to disregard various arguments and supplemental authority presented by the Kobobels, but the record does not include a ruling on that motion.

■ When a trial court does not rule on a motion, it may be considered implicitly denied, *see Jenkins v. Glen & Helen Aircraft, Inc.*, 42 Colo.App. 118, 590 P.2d 983 (1979), or such failure to rule may be considered harmless error. *See Raygor v. Board of County Commissioners*, 21 P.3d 432 (Colo. App.2000).

Here, the trial court granted summary judgment on October 31, 2001, stating its ruling was based on the amended complaint, plaintiff's motion, the supporting affidavits, defendants' response, and plaintiff's reply. The index of the record indicates that Elmer Kobobel's deposition was filed in February 2002. Consequently, we consider only the items enumerated by the trial court.

## III.   Use of the Field Lane

■ The Kobobels contend there are disputed issues of material fact as to the use of the field lane across their land adjacent to the north section line of Section 15. We agree.

The Kobobels assert that the only evidence of record related to use over the years was a neighbor's deposition testimony that the field lane was occasionally used for access to the cemetery. While the Kobobels refer to Elmer Kobobel's deposition to contradict this testimony, for the reasons stated above, we do not consider it here. However, his affidavit states that the lane does not provide access to the cemetery, that the western portion of the road was abandoned, that the lane is used by his family, that only defendant Kelley attempted to use the lane in 1991, and that access to the cemetery is through Section 10.

The neighbor testified that his father used the road as a shortcut three or four times a year in the early 1940s and that he had used it once a year or less since 1980. He also indicated that a local club would go to the cemetery and clean it, although he did not state how they traveled to the cemetery. He further stated that he was unaware of any other people who used the section line road to get to the cemetery.

Plaintiff also offers the geodetic engineer's report concluding that the aerial photographs, maps, and personal reconnaissance present no evidence of the northern route to the cemetery. However, this report is contradicted by the affidavit of plaintiff's own witness, who testified to traveling that route.

The trial court's order states that maps and aerial photographs show that the road has been in regular use for nearly a century. However, for summary judgment purposes this evidence proves only that a road exists, but does not address whether the use of the road was by the public or, as the Kobobels claim, by the property owners and their licensees.

We conclude that this evidence is sufficient to raise material questions of fact as to use of the field lane.

### IV. Prescriptive Use

■ We also agree with the Kobobels' contention that there is insufficient evidence to support the trial court's conclusion that the entire length of the road was established as a public road by prescriptive use under § 43–2–201(1)(c), C.R.S.2002.

Section 43–2–201(1)(c) states that all roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years are declared to be public highways.

■ A party seeking to establish a public highway across private property must demonstrate (1) the public used the road under claim of right and in a manner adverse to the landowner's property interests; (2) the public use was uninterrupted for twenty years; and (3) the landowner had actual or implied knowledge of the public's use and made no objection to such use. *See Board of County Commissioners v. Flickinger*, 687 P.2d 975 (Colo.1984); *Littlefield v. Bamberger*, 32 P.3d 615 (Colo.App.2001).

Plaintiff contends that the neighbor's deposition is sufficient to conclude that the road had been used adversely for the statutory twenty years. However, even if the deposition establishes twenty years of public use, it does not establish that the entire road was used under a claim of right or that the Kobobels or their predecessors knew of the use and made no objection to it.

Thus, we conclude there was insufficient evidence that a public road was established by prescriptive use.

### V. Statutory Abandonment

■ However, we reject the Kobobels' contention that if the road was ever a dedicated public road under § 43–2–201(1)(b), C.R.S.2002, the relocation of the county road system in the 1930s effected as a matter of law a statutory abandonment of the western half of the road under § 43–2–113, C.R.S. 2002.

Section 43–2–113 provides in relevant part that:

When a portion of the county primary system is relocated and because of such relocation a portion of the route as it existed before such relocation is, in the opinion of the board of county commissioners, no longer necessary as part of the county road system, such portion shall be consid-

ered as abandoned, and title to it shall revert to the owner of the land through which such abandoned portion may lie subject to the provisions of part 3 of this article. If it appears that such abandoned portion is necessary for use as a secondary road, then such abandoned portion shall become a secondary road, upon the adoption by the board of county commissioners of a resolution to that effect.

When interpreting statutes, we must give effect to the intent of the General Assembly. We look initially to the language of the statute and give effect to the commonly accepted meaning of the words. *See Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996).

We also should give effect to each word and construe each provision in harmony with the overall statutory design, whenever possible. *Telluride Resort & Spa, L.P. v. Colorado Department of Revenue,* 40 P.3d 1260 (Colo.2002). Where the statutory language is clear and certain, the statute should be construed as written. *See City of Aurora v. Board of County Commissioners,* 919 P.2d 198 (Colo.1996). An interpretation that renders a statute null and void cannot be admitted. *See Edwards v. Denver & R.G. R. Co.,* 13 Colo. 59, 21 P. 1011 (1889).

Here, the trial court concluded that, even though it appears that there has been no regular maintenance on this portion of the road since at least the mid–1930s, the road may not be considered abandoned or vacated by the public. It also concluded that there has been no official county action vacating this road, and simple lack of maintenance or nonuse will not effect an abandonment even when alternative roads have been put in place. We conclude that the question of abandonment or nonabandonment could not be determined as a matter of law on a summary judgment basis.

To consider the road abandoned, the first sentence of § 43–2–113 requires not only a relocation of the county road system, but also an opinion of the board of county commissioners that the road is no longer necessary. The statute does not state whether that opinion is to be established by formal action or can be determined by the board's action or inaction. Significantly, the first sentence of the statute does not require a resolution for abandonment. The second sentence assumes abandonment has occurred and requires a resolution to convert an abandoned primary road into a secondary road. As pertinent here, nothing in the statute provides that relocation of a road establishes abandonment as a matter of law.

Thus, we are not persuaded by the Kobobels' argument that the board was required by § 43–2–113 to adopt a resolution designating the road as necessary for secondary use. The plain language of § 43–2–113 requires a resolution only in the event a portion of the road has been abandoned and is necessary for a secondary road. Lack of such a resolution does not establish abandonment.

Nevertheless, the relocation of the roads and other circumstances raise a question of fact whether, in the board's opinion, the road was no longer necessary.

■ Ordinarily, public highways remain public unless and until vacated or abandoned by some appropriate action. *See Raftopoulos v. Farrow,* 691 P.2d 1160 (Colo.App.1984).

■ The Kobobels argue that title to the road reverted to the owners in the manner provided in § 43–2–302, C.R.S.2002, providing for vesting of title upon vacation. Plaintiff argues that, to vacate a county road, the board of county commissioners would have to comply with § 43–2–303(2)(b), C.R.S.2002, which provides that if any roadway has been established as a county road at any time, such roadway shall not be vacated by any method other than a resolution approved by the board of county commissioners. Thus, according to plaintiff, it is not possible under Colorado law for a public road to be abandoned except by affirmative action. Plaintiff's position, however, would render § 43–2–113 a nullity.

Section 43–2–303 addresses methods of vacation, not abandonment. Although the terms are often used interchangeably, abandonment and vacation are not synonymous. *See Martini v. Smith, supra* (if vacation not effected, court should conduct an abandonment analysis); *Alexander v. McClellan,* 56

P.3d 102 (Colo.App.2002)(holding that vacation resolution and board minutes do not establish abandonment as a matter of law); *see also* § 30–28–106(3)(a)(V), C.R.S.2002 (master plans may provide for the "acceptance, widening, ... vacation, abandonment, [or] modification" of public ways). *But see Uhl v. McEndaffer,* 123 Colo. 69, 225 P.2d 839 (1950)(using phrase "abandonment or vacation").

Because we conclude that the existence of both statutes affirms a distinction between vacation and abandonment, and the Kobobels do not claim there was a vacation of the road, the requirements of the vacation statute, § 43–2–303(2)(b), do not apply here.

Thus, while the Kobobels assert that the county commissioners failed to maintain the road after the mid–1930s realignment, in our view, that fact alone is not sufficient to establish statutory abandonment as a matter of law.

## VI. Common Law Abandonment

■ However, we agree with the Kobobels that evidence of nonuse creates a material issue of fact whether there has been common law abandonment.

■ Abandonment of a public road requires proof of intent to abandon and proof of nonuse. *See Martini v. Smith, supra; Koenig v. Gaines,* 165 Colo. 371, 440 P.2d 155 (1968)(nonuse and evidence of an intent or determination to abandon amply support a finding of abandonment; the duration of nonuse may give rise to a presumption of abandonment); *Alexander v. McClellan, supra.*

■ Generally, whether a public road has been abandoned is a question of fact. The burden of establishing abandonment is on the party asserting it. *Heath v. Parker,* 30 P.3d 746 (Colo.App.2000). However, proof of formal board action is not always necessary. *See Peroulis v. Board of County Commissioners,* 665 P.2d 134 (Colo.App. 1982)(an actual formal record of all a board of commissioners may decide and do is not always necessary to make its acts binding).

Here, the Kobobels argue that: (1) the road had not been adversely and continuously used for more than sixty-five years; (2) the aerial photographs submitted by plaintiff indicate that the north-south road to be opened under the 1902 petition was never opened; (3) the expert's maps are not supported by the aerial photographs; (4) the road does not provide access to either the Kelley property or the cemetery; and (5) a right-of-way for the location of a gas main was established in the late 1950s through easements granted by the property owners, but not the county. Elmer Kobobel's affidavit also indicates the county placed a large reflective safety barrier at the west end of the purported road, indicating that the county road ends at that point.

Plaintiff presented defendant Kelley's affidavit stating that she and her husband accessed their property by the road along the section line between 1991 and 1997 until Elmer Kobobel obstructed it. Her affidavit further states that the road in question is the "most direct, shortest and practicable" route from a county road.

Although some maps submitted by plaintiff show the road as "primitive," a 1913 map does not show the road at all. To the extent such maps indicate that a road exists, they do not establish who used it. Further, the 1902 petition dedicated only the western half of the disputed road.

Thus, material issues of fact remain whether the eastern half of the road ever was a public road and, if it was, whether it has since been abandoned.

Based on the parties' submissions, we conclude there are issues of material fact as to whether the road was abandoned.

## VII. Recording

■ The Kobobels further contend that, because the 1902 road petition was not recorded in the grantor-grantee index of the clerk and recorder's office of Morgan County as required by the recording law at the time, subsequent purchasers, including the Kobobels, of the affected land take title unencumbered by the public road. Because this issue was not raised until the Kobobels filed their supplemental authority to reply to an objection to the form of the proposed order and

was not addressed by the trial court, we do not address it here. *See Timm v. Reitz, supra.*

## VIII. Indispensable Parties

■ The Kobobels further contend the case is not properly postured because indispensable parties were not joined, despite the minute order of May 7, 2000, directing plaintiff to amend its complaint to add all such parties. The Kobobels assert that the owner of the remaining lands in Section 10 must be named as a defendant because the primary access to the Kelley parcel and the cemetery crosses its land. We conclude this question should be reconsidered on remand.

■ Whether a party is indispensable and must be joined is a mixed question of law and fact and must be determined on the facts of each case. *See Aztec Minerals Corp. v. Romer,* 940 P.2d 1025 (Colo.App.1996).

Under C.R.C.P. 19(b), the trial court, in determining whether a person is an indispensable party, should consider: (1) whether a judgment rendered in the person's absence might be prejudicial to him or her or those already parties; (2) whether prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Here, there is no evidence that the road in question provides access to, crosses, or is adjacent to the remainder of Section 10. Despite the Kobobels' assertion that access to the Kelley property and the cemetery has traditionally been through the north half of Section 10, it is not necessary for the owner to be joined to determine whether the road across the Kobobels' property is a public road. Thus, the unnamed party would not be prejudiced, and a judgment rendered in its absence would adequately address plaintiff's concerns. However, as discussed below, such parties might be affected if the court considers whether alternative access routes are available.

Therefore, the question of indispensable parties should be reconsidered on remand.

## IX. North–South Road

■ We similarly conclude the court should consider on remand plaintiff's argument that if the road were abandoned, both the Kelley and cemetery properties would be without access to county roads.

■ In addition to the questions of intent and nonuse, the party seeking to establish abandonment must demonstrate that its actions will not create parcels without access. *See* § 43–2–303(2)(a), C.R.S.2002; *Heath v. Parker, supra.* The division in *Heath* held that a county cannot, without compensation, formally abandon a public road if such action would deprive abutting landowners of access to their property. It stated that the availability of substitute access provided by another road has usually been a relevant, if not critical, factor in determining an intent to abandon.

The Kobobels dispute plaintiff's evidence on this question. They point to inconsistencies in the neighbor's affidavit, including confusion about the road being discussed, the location and existence of the fenceline, and the timeline in question. The Kobobels also contend that plaintiff's expert misread the aerial photographs and that the photographs are consistent both with the expert's conclusion of public use and with their claim that the owners of the property, not the public, used the road.

The Kobobels also assert that the 1975 aerial photograph submitted by plaintiff shows access to the Kelley property and the cemetery through Section 10. The Kobobels point out that the gate is located in the northwest corner of the cemetery, and this location is inconsistent with plaintiff's claim that the section line road provided access to the cemetery. They further note a fence along the south end of the cemetery property, which does not have a gate or any other means of passage. Therefore, the Kobobels urge us to conclude that the abandonment of the section line road would not deny access to these two parcels.

The trial court here did not address the status of the north-south road through Sections 10 and 15 created by the 1902 petition. If that road was not abandoned by the county, presumably Kelley would have access through that route. If the court determines that the north-south road was abandoned because of realignment, arguably that same evidence would constitute evidence of abandonment of the road currently in dispute. Accordingly, we conclude that whether the Kelley property and the cemetery are without access is a disputed issue of fact.

The judgment is reversed, and the case is remanded for further proceedings.

Judge METZGER and Judge GRAHAM concur.