The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 2, 2021

**2021COA119**

**No. 20CA0919, *CadleRock v Esperanza Architecture* — Uniform Commercial Code — Negotiable Instruments**

A division of the court of appeals considers whether a line of credit is a negotiable instrument under section 4-3-104(a), C.R.S. 2020. The division concludes that a line of credit is not a negotiable instrument because it fails the "fixed amount of money" requirement. *Id.* The division further concludes that, because article 3 of the Colorado Uniform Commercial Code applies only to negotiable instruments, article 3 does not bar a plaintiff from enforcing a defaulted line of credit. Accordingly, the division reverses the district court's grant of summary judgment on plaintiff's claim of past due and unpaid installments.

The division also (1) reverses the portion of the summary judgment dismissing plaintiff's quantum meruit and unjust

enrichment claims because plaintiff sufficiently established a genuine issue of material fact; (2) affirms the unchallenged portions of the summary judgment; and (3) declines to consider plaintiff's breach of contract claim because it is not before the division.

COLORADO COURT OF APPEALS **2021COA119**

Court of Appeals No. 20CA0919
Garfield County District Court No. 19CV30022
Honorable Denise K. Lynch, Judge

CadleRock Joint Venture LP,

Plaintiff-Appellant,

v.

Esperanza Architecture & Consulting, Inc.; Curtis G. Odom; and Angela D.
Odom, n/k/a Angela D. McDermott,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART

Division VII
Opinion by JUSTICE MARTINEZ*
Fox and Pawar, JJ., concur

Announced September 2, 2021

RoweLaw, LLC, R. William Rowe, Denver, Colorado, for Plaintiff-Appellant

Coan, Payton, & Payne LLC, Brett Payton, Donovan P. Gibbons, Greeley,
Colorado, for Defendants-Appellees Esperanza Architecture & Consulting, Inc.
and Curtis G. Odom

Clay, Dodson, & Huffman, P.C., Julie Joanne Huffman, Delta, Colorado, for
Defendant-Appellee Angela D. McDermott

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1     CadleRock Joint Venture, LP, sued Esperanza Architecture & Consulting, Inc.; Curtis G. Odom; and Angela D. Odom, now known as Angela D. McDermott (collectively, the borrowers) alleging that the borrowers owed it $870,361.21, plus interest and attorney fees and costs, pursuant to a line of credit on which the borrowers had defaulted.  The borrowers moved for summary judgment.  The district court granted the motion as to all but one of CadleRock's claims.  CadleRock appeals the grant of summary judgment.  We reverse in part and affirm in part.

## I.     Background

¶ 2     In 2005, WestStart Bank, a nonparty, issued the borrowers a $500,000 "revolving line of credit" (the Credit Agreement).  The following year, the same parties signed a Change of Terms Agreement, which modified the repayment terms in the Credit Agreement and "increase[d] the revolving line of credit from $500,000.00 to $750,000.00."  The parties also signed a related Business Loan Agreement.

¶ 3     The borrowers stopped making payments and defaulted in January 2012.

¶ 4 CadleRock asserts that, "[b]y endorsements and allonge(s)," it is the successor in interest to the defaulted line of credit.[1] But it admits that a prior holder of the loan lost the original Credit Agreement.

¶ 5 In 2018, CadleRock sued the borrowers, raising the following claims: "debt due, including for past due and unpaid installment[s]"; breach of contract; quantum mer[u]it; unjust enrichment; promissory estoppel; and "account stated, after October 2, 2017 . . . ."

¶ 6 In moving for summary judgment, the borrowers asserted that the Credit Agreement was a negotiable instrument governed by article 3 of the Colorado Uniform Commercial Code (UCC). *See* § 4-3-104(a), C.R.S. 2020 (defining "negotiable instrument"); *see also* § 4-3-102(a), C.R.S. 2020 (limiting the provisions of UCC article 3 to negotiable instruments). The borrowers therefore alleged that CadleRock was barred from enforcing the defaulted line of credit under several UCC provisions. The borrowers also contended that

---

[1] According to CadleRock, U.S. Bank National Association (US Bank) acquired WestStar and gained possession of the defaulted line of credit. US Bank then assigned the debt to Acquired Capital who subsequently assigned it to CadleRock.

CadleRock failed to "establish a chain of ownership" showing it "actually bought" the debt. The district court granted the motion for summary judgment in part and denied it in part, dismissing all but CadleRock's breach of contract claim.

¶ 7 CadleRock appealed, and a division of this court issued an order to show cause why the appeal should not be dismissed for lack of a final appealable order. CadleRock then provided an order certifying the partial summary judgment as final pursuant to C.R.C.P. 54(b), and this court allowed the appeal to proceed.

¶ 8 CadleRock now argues the district court erred in (1) finding the Credit Agreement was a negotiable instrument and therefore dismissing CadleRock's past due and unpaid installments claim; (2) concluding the Change of Terms and Business Agreements were "part of" the Credit Agreement; (3) dismissing CadleRock's quantum meruit and unjust enrichment claims; and (4) "decid[ing] that Cadle[Rock] could proceed on a breach of contract claim, after determining that the subsequent agreements were part of the [Credit Agreement] that Cadle[Rock] cannot enforce." CadleRock does not challenge the district court's grant of summary judgment as to its promissory estoppel or account stated claims.

## II. Summary Judgment

¶ 9 We review a district court's grant of summary judgment de novo. *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo. 2002). Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Martini v. Smith*, 42 P.3d 629, 632 (Colo. 2002); *accord Ryser v. Shelter Mut. Ins. Co.*, 2019 COA 88, ¶ 10, *aff'd on other grounds*, 2021 CO 11, ¶¶ 10-11; C.R.C.P. 56(c). The nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini*, 42 P.3d at 632.

## III. Past Due and Unpaid Installments Claim

¶ 10 CadleRock first contends that the district court erred in concluding the Credit Agreement is governed by the UCC and thereby dismissing CadleRock's past due and unpaid installments claim. CadleRock specifically argues that the UCC does not apply because the Credit Agreement is not a negotiable instrument. We agree.

### A. Applicable Law and Standard of Review

¶ 11 "Article 3 of the UCC governs the issuance, transfer, enforcement, and discharge of negotiable instruments." *Gunderson v. Weidner Holdings, LLC*, 2019 COA 186, ¶ 15; *accord Liberty Mortg. Corp. v. Fiscus*, 2016 CO 31, ¶ 13. But, if a written "agreement is not a negotiable instrument, . . . the statutory provisions relating to negotiable instruments are inapplicable to the transaction." *Reid v. Pyle*, 51 P.3d 1064, 1067 (Colo. App. 2002).

¶ 12 A negotiable instrument is (1) "an unconditional promise or order" (2) "to pay a fixed amount of money, with or without interest or other charges described in the promise or order." § 4-3-104(a). To enforce a negotiable instrument, one must be "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 4-3-309 or [section] 4-3-418(d)[, C.R.S. 2020]." § 4-3-301, C.R.S. 2020.

¶ 13 We review de novo whether a loan document is a negotiable instrument. *Gunderson*, ¶ 15. We also review de novo the district court's interpretation of contracts and statutes. *See Ryser*, ¶ 11;

*Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).

B.    The Credit Agreement is Not a Negotiable Instrument

¶ 14    CadleRock contends the Credit Agreement was not a negotiable instrument because it does not meet the "fixed amount of money" requirement.[2]  *See* § 4-3-104(a).  We agree.

¶ 15    The Credit Agreement specifies that it "covers a revolving line of credit for the principal amount of [$500,000], which will be [the borrowers'] 'Credit Limit,'" and that the borrowers may borrow against the line of credit, "repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit."  It also states that the borrowers promise to pay "the total of all credit advances and FINANCE CHARGES, together with all costs and for which [the borrowers are] responsible under this Agreement or under the 'Deed of Trust' . . . ."

---

[2] The district court largely limited its analysis to the Credit Agreement but applied the UCC to all three agreements after concluding the Credit Agreement "[wa]s modified but not superseded by" the Change in Terms and Business Loan Agreements.

6

¶ 16    Relying on this language, the district court found that, while the borrowers could have taken out "any amount up to $500,000.00, the amount they promised to pay was 'fixed' or determinable in the sense that it could be easily calculated based on the above language." We don't read the agreement that way.

¶ 17    While we aren't aware of any Colorado decision addressing whether a line of credit may be considered a "fixed amount of money" and neither party points us to any binding authority, other courts have addressed this issue and we find their reasoning persuasive. In *Heritage Bank v. Bruha*, 812 N.W.2d 260, 266 (Neb. 2012), for example, the Nebraska Supreme Court held that a promissory note failed the "fixed amount of money" requirement because the note stated that it "evidence[d] a revolving line of credit" and that the borrower "promise[d] to pay 'the principal amount . . . *or so much as may be outstanding* . . . .'" The court reasoned that, given this language, "one looking at the instrument itself cannot tell how much [the borrower] has been advanced at any given time." *Id.* at 268; *accord Yin v. Soc'y Nat'l Bank Ind.*, 665 N.E.2d 58, 62 (Ind. Ct. App. 1996) (concluding an agreement for "$2,000,000 . . . or so much thereof as may be advanced" was not a

negotiable instrument because "the amount advanced to the parties could not be determined with certainty absent an inquiry to other documents"); *Cadle Co. v. Allshouse*, No. 2023OF2006, 2007 WL 5472749 (Pa. Ct. Com. Pl. Mar. 16, 2006) (finding an agreement was "not for a fixed amount, but rather is a line of credit that permitted [the borrower] to draw advances"), *aff'd*, 959 A.2d 455 (Pa. Super. Ct. 2008) (unpublished table decision); *see OneWest Bank, N.A. v. FMCDH Realty, Inc.*, 83 N.Y.S.3d 612, 616-17 (App. Div. 2018) (noting that, in multiple jurisdictions, "line of credit agreements have been held to be distinct from an agreement to pay a sum certain"); *see also Farmers Prod. Credit Ass'n v. Arena*, 481 A.2d 1064, 1065 (Vt. 1984) (holding an agreement allowing "future advances" was not a negotiable instrument).

¶ 18     When a bank advances the borrower the principal at the start of the loan period, and the borrower promises to repay that amount with interest and other costs at intervals outlined in the loan agreement, the loan instrument reveals the amount advanced.  But here, the Credit Agreement allows the borrowers to draw on the line of credit, repay the loan, and then re-borrow up to the credit limit. Thus, like in *Bruha*, instead of promising to repay the principal, the

8

borrowers here promised to pay the "the total of all credit advances." While the Credit Agreement specifies an upper limit to the total amount advanced, it allowed the borrowers to draw less than the limit or to draw more than the limit over the course of the loan by repaying and re-borrowing. As a result, the amount the borrowers promised to pay could fluctuate significantly over the course of the loan. This means that, without knowing the total advanced, the amount the borrowers promised to pay cannot be determined from the Credit Agreement. Thus, the Credit Agreement does not reflect a promise or order to pay a "fixed amount" and is not a negotiable instrument.

¶ 19 Because UCC article 3 only governs negotiable instruments, *see Reid*, 51 P.3d at 1067, CadleRock is not barred from enforcing the Credit Agreement under any article 3 provisions. For this reason, we reverse the district court's grant of summary judgment as to CadleRock's past due and unpaid installments claim.

### IV. Interpreting Together the Credit, Change of Terms, and Business Loan Agreements

¶ 20 Next, CadleRock argues the district court erred in finding that the Credit Agreement was "modified but not superseded by" the

9

Change of Terms and Business Loan Agreements. Interpreting the court's language as integrating the three agreements, CadleRock states "the major import" of this ruling is that CadleRock is "forestalled" from enforcing the defaulted line of credit under section 4-3-309 because the original Credit Agreement "was lost by its predecessor-in-interest."

¶ 21 To the extent CadleRock raises this issue as a means of challenging the district court's determination that it was barred from enforcing the defaulted line of credit under article 3, we need not address it in light of our determination that UCC article 3 doesn't govern the enforcement of the Credit Agreement. *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1193 (Colo. App. 2011). Put another way, CadleRock isn't barred from enforcing the defaulted line of credit because it lacks the original document for the Credit Agreement, so irrespective of whether the three agreements are integrated or not, CadleRock may move forward with its claim.

¶ 22 Assuming instead that CadleRock argues the district court erred in concluding the Credit Agreement incorporates the Change of Terms and Business Loan Agreements, we can't review that claim

because the court did not make specific findings about whether the three agreements are integrated. Thus, should the district court determine on remand that it must address whether the three agreements are integrated, the court should make additional findings on this matter.

## V. Quantum Meruit and Unjust Enrichment Claims

¶ 23 CadleRock next argues that the district court erred in granting summary judgment on its quantum meruit and unjust enrichment claims. We agree.

¶ 24 Quantum meruit, also termed quasi-contract or unjust enrichment, is an equitable doctrine that "seeks to restore fairness when a contract fails." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444-45 (Colo. 2000). The doctrine serves to "gaug[e] the equities and ensur[e] that the party receiving the benefit of the bargain pays a reasonable sum for that benefit." *Id.* at 445. To recover under a claim of quantum meruit or unjust enrichment,

> a plaintiff must show (1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value.

11

*Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649
P.2d 1093, 1096-97 (Colo. 1982).

¶ 25    In dismissing CadleRock's quantum meruit and unjust
enrichment claims on summary judgment, the district court found
that CadleRock "failed to demonstrate that [the borrowers] received
a benefit at [CadleRock's] expense" and offered no response to the
borrowers' contention that CadleRock "had an opportunity to
conduct due diligence prior to purchasing the loans from Acquired
Capital, and therefore knew or should have known the risk
associated with the debt."

¶ 26    But at the summary judgment stage, the burden was on the
borrowers, not CadleRock, to demonstrate that there was no
disputed issue of fact, and CadleRock was entitled to the benefit of
all favorable inferences.  *See Martini*, 42 P.3d at 632.  The
determination of whether CadleRock conferred a benefit on the
borrowers hinges on whether CadleRock is properly the
successor-in-interest to WestStar.  As the district court otherwise
found in denying summary judgment as to CadleRock's breach of
contract claim, "giving [CadleRock] the benefit of all favorable
inferences, . . . [CadleRock] has presented sufficient evidence to

establish a genuine issue of material fact as to whether the debt at issue in this case was assigned to [it]."

¶ 27 Thus, because we agree that CadleRock has established a genuine issue of material fact as to whether it was assigned the defaulted line of credit, we conclude there was likewise a genuine issue of material fact as to whether CadleRock conferred a benefit on the borrowers. For this reason, we reverse the district court's grant of summary judgment as to CadleRock's quantum meruit and unjust enrichment claims.

## VI. Breach of Contract Claim

¶ 28 Finally, CadleRock appears to argue that the district court erred in *denying* the borrowers' summary judgment motion as to CadleRock's breach of contract claim. CadleRock's point may be that the district court, in ruling CadleRock was barred from enforcing the three agreements under section 4-3-309, stripped CadleRock's breach of contract claim of any hope of success and effectively granted summary judgment on this claim. Regardless, the court's denial of summary judgment is not reviewable as it is not a final order. Thus, we do not address it, other than to the extent it is affected by our conclusion that section 4-3-309 does not

apply. *Bd. of Cnty. Comm'rs v. BDS Int'l, LLC.*, 159 P.3d 773, 783 (Colo. App. 2006) (declining to review the district court's summary judgment denial and noting that, while a court may certify a partial grant of summary judgment as a final appealable order, the district court retains jurisdiction to rule on those claims not certified as final appealable orders).

## VII.  Conclusion

¶ 29    We reverse the district court's award of summary judgment to the borrowers on CadleRock's claims for past due and unpaid installments on a promissory note, quantum meruit, and unjust enrichment.  Because CadleRock does not appeal the district court's award of summary judgment on its promissory estoppel and account stated claims, we do not disturb the district court's ruling on those claims.  Finally, we do not reach CadleRock's breach of contract claim because it is not properly before us.

JUDGE FOX and JUDGE PAWAR concur.